99 So.2d 20

STATE of Louisiana, through the DE-PARTMENT OF HIGHWAYS

v.

Dominick J. RAGUSA, and Madeline FARUGGIA, Wife of Dominick J. Ragusa.

No. 43250.

Jan. 6, 1958.

W. Crosby Pegues, Jr., D. Ross Banister, Baton Rouge, Howard W. Lenfant, New Orleans, for plaintiff and appellant.

Dodd, Hirsch, Barker & Meunier, New Orleans, for defendants-appellees.

SIMON, Justice.

The State of Louisiana, through the Department of Highways, under LSA–R.S. 48:441 et seq., expropriated property of the defendants as lying in the right-of-way of the approaches to the new Mississippi River Bridge at New Orleans. Upon the defendants' refusal to accept the sum of $19,000 as the fair valuation for their property, plaintiff instituted this suit for a judicial fixing of the amount of just compensation at a sum not to exceed $19,000 and deposited the said sum in the registry of the court.

Defendants answered and averred that the sum of $23,000 was the true market value of the property. The lower court rendered judgment awarding to the defendants the sum of $21,500 together with interest at the rate of 5% on said amount from date of judicial demand. Plaintiff appealed. The defendants have not answered but seek only an affirmance of the judgment rendered.

The right of and the necessity for the Department of Highways to expropriate the property is not contested. The only issue before us is the ascertainment of its true valuation and which presents solely a question of fact.

LSA–C.C. Art. 2633 provides the basis for determining the value of property expropriated as follows:

"In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."

Under said article it may be generally stated that the criterion to be applied in arriving at the basis for assessments of the "true value" of property in expropriation proceedings is the market value or the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put as well as all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken. Housing Authority of Shreve-

port v. Green, 200 La. 463, 8 So.2d 295; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445; Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37.

■ The subject property is situated in the First District of the City of New Orleans, in Square No. 238, bounded by Calliope, Carondelet, Clio and Baronne Streets, and designated as Lot No. One, measuring 30 feet front on Calliope Street by 96 feet in depth and front on Baronne Street, between parallel lines. The improvements thereon are designated by the municipal numbers 1100–02 and 1106–08 Baronne Street. The premises 1100–02 Baronne Street consist of a store and residence, constructed of frame weather board, and is in fair condition. The residence consists of six rooms and two baths. The premises 1106–08 Baronne Street consist of a workshop and a two-story dwelling, constructed of frame weather board and is in poor condition. The dwelling consists of three rooms and a bath. The buildings are covered with a slate roof. The property is located in a low class predominately colored neighborhood which bears the zoning classification of "J-Industrial".

The subject property was acquired by the defendants on November 7, 1952 for the price of $12,250. On or about December 1, 1952 the property was damaged by fire necessitating repairs at an estimated value of approximately $10,000 for material and labor.

Four expert witnesses, known realtors of New Orleans, and of equal eminence, testified as to the fair market value of the subject property. Mr. Cliff Probst and Mr. Philip Zollinger, expert witnesses for the defendants, appraised the value of the property at $23,040 and $22,000 respectively. Mr. E. Holland Johnson and Mr. Eugene A. Aschaffenburg, expert witnesses for the plaintiff, appraised the value of the property at $19,000. Each of the experts testified in detail as to the basis of his respective opinion and conclusions.

Probst in his capacity as a realtor had handled the subject property and managed it for the previous owner and had negotiated the sale agreement to the defendants. He appraised the value of the property at $8 per square foot for land and improvements, or the sum of $23,040. In arriving at this figure he expressed the opinion that the value had enhanced from 1952 to 1956 by 17½% to a total value of $14,003.25, to which value as a property management expert he added his own estimate of $10,000.00 for repairs and improvements to the property made shortly after its acquisition and damage by fire

in 1952. He depreciated the whole property by 10%, arriving at the sum of $22,-009.95, which with a consideration of other factors he arrived at a value of $23,000. He also considered and employed the rental method, estimating an annual rental income from the property, were it placed to its available use as rental property, to be the sum of $3,264.40, and the comparable value method, comparing private sales as well as of public sales to the Department of Highways of similar property within the vicinity of the subject property.

Zollinger arrived at his appraised value of $22,000 or $7.60 per square foot of the land and improvements by the use of the rental income method, the comparable value method, and the summation method which is a consideration of the reproduction or replacement cost less depreciation.

Johnson and Aschaffenburg used recent sales of comparable property to arrive at their valuation as well at the rental capitalization value, using lower figures than the defendants' expert witnesses used on the store and for the lower apartment. These appraisers checked the comparable rents in the neighborhood of the subject property in order to use their income approach to fix the valuation on the commercial property of the defendants. They estimated a value per room on the residential portion of the subject property. Mr. Johnson opined that the summation approached is very unreliable on account of the tremendous amount of depreciation on the subject property and he considered primarily the rental capitalization method in appraising the value thereof.

We have the benefit of the written reasons of the trial judge who personally inspected the property and viewed the locality to the end of more effectively pondering and weighing the testimony of all of the experts. With all these facts in mind he fixed an award which was less than that fixed by defendants' experts and more than that fixed by plaintiff's experts.

Plaintiff, however, disapproves of the averaging of the several appraisals made by the expert witnesses, the sum offered by plaintiff and the sum demanded by defendants, as the method apparently used by the trial judge in arriving at his award. It contends that the use of recent sales of comparable property to arrive at the valuation of the subject property is the best method of arriving at the fair market value, and in support of its contention cites City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; City of New Orleans v. Noto, supra; Housing Authority of New Orleans v. Persson, supra; and State v. Dowling, 205 La. 1061, 18 So.2d 616. Plaintiff also contends that the replacement method is not sound appraisal practice and is not a fair method of appraising this type of property, and cites City of New Orleans v. Noto, supra; and Texas Pacific-Missouri Pac. Terminal R. R. of

New Orleans v. Rouprich, 166 La. 352, 117 So. 276.

On the other hand the defendants contend that though this Court has not given official sanction to the averaging of figures, it nevertheless on numerous occasions has carefully weighed the differences between the appraisals of the experts and arrived at a fair market value based on a mean figure not necessarily exactly between the figures given by the experts on either side, and they cite the cases of Housing Authority of New Orleans v. Persson, supra; Housing Authority of New Orleans v. Brinkmann, supra; City of Shreveport v. Abe Meyer Corp., supra; and Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541.

 Under the circumstances, this case, from its very nature, presents solely a question of fact, and we cannot say that there is palpable error in the award or that it is manifestly excessive. The various methods to appraise the value of the subject property have materially assisted us in determining the correctness of the trial judge's findings, and the principle that findings of fact by the trial judge shall not be disturbed in the absence of manifest error is too well settled to warrant citation. Furthermore, we consider the discrepancy in the values fixed by the experts and the award made by the judge to be strikingly narrow. We recognize the accepted rule that the opinions of qualified experts are of material aid and should be given weight and effect, particularly where, as in the instant case, these opinions appear to be well grounded from the standpoint of sincerity and logic. A consideration of all the factors involved in this matter and an analysis of the testimony of the experts convinces us that the amount awarded is a fair market value of the subject property.

We are impressed with and take this opportunity to commend the diligence and aggressive effort expended by the trial judge in deciding this, the first contested cause heard by him since his elevation to the bench.

For the reasons assigned the judgment of the lower court is affirmed.