131 So.2d 628 (1961)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Justin GRAS, First National Bank of Shreveport, Testamentary Executor of the Succession of Justin Gras and Mrs. Eugenie Torr Gras, Substituted Defendants, Defendants-Appellants.
No. 9469.
Court of Appeal of Louisiana, Second Circuit.
April 12, 1961.
On Rehearing June 16, 1961.
*629 W. Crosby Pegues, Jr., D. Ross Banister, Glenn S. Darsey, Braxton B. Croom, Richard Alsina Fulton, by B. B. Croom and J. S. Moore, Jr., Baton Rouge, for appellant.
Cook, Clark, Egan, Yancey & King, by S. E. Cook and Sidney Galloway, Shreveport, for appellee.
BOLIN, Judge.
The State of Louisiana, through The Department of Highways, expropriated 157.30 square feet of land located at the *630 intersection of Caddo and Common Streets in the City of Shreveport which belonged to the defendants. This small parcel was a portion of a larger tract measuring approximately one hundred twenty feet on Caddo Street with a depth of one hundred seventy-five feet. The land taken was necessary for the purpose of "rounding a corner" in the construction of a highway by the plaintiff. As the portion taken encroached upon a frame residence, the entire building was included in the expropriation. The structure in question was approximately fifty years old and had been utilized as Negro rental property.
Pursuant to LSA-R.S. 48:441 to 48:460, the two experts appointed by the plaintiff estimated the just compensation due for the property taken to be Two Thousand Eight Hundred and No/100 ($2,800) Dollars and such amount was deposited in the registry of the court. The defendant not being satisfied with this appraisal, filed an answer in which he prayed that such award be increased to the sum of Five Thousand Seven Hundred Thirty Six and 12/100 ($5,736.12) Dollars. The original defendant, Justin Gras, died before the trial and The First National Bank of Shreveport, executor of his estate, and his widow were joined as parties defendant. Judgment was rendered in the district court rejecting the demands of the defendants and fixing the value of the property at the sum of Two Thousand Eight Hundred and No/100 ($2,800) Dollars in conformity with the estimate made by the plaintiff's appraisers. From this judgment, the defendants have perfected this appeal.
Counsel for the defendants in their brief assign the following errors as having been committed by the lower court:
1. In completely disregarding all the testimony of defendants' witnesses.
2. In adopting the testimony of witnesses for the plaintiff which was based upon sales of property not comparable to that owned by the defendants.
In an effort to prove the amount of compensation due for the property, the plaintiff offered the testimony of Mr. Lawrence L. May and O. L. Jordan, both of whom were legally qualified appraisers and experts in real estate values in the vicinity of the subject property. The defendants presented the testimony of seven witnesses. While none of these witnesses could be classified as expert appraisers, the record indicates that at least several of them had extensive dealings in property similar to that involved herein.
In rendering judgment, the trial judge assigned brief written reasons in which we find the following:
"No legally qualified appraisers testified for the defendants but they offered the testimony of several persons supposedly familiar with this particular type of property.
"After reading all of the testimony of all of the witnesses in the case, considering their experience, knowledge of the facts, and their reasons for their conclusions, we must accept the value of $2,800.00 as being the true value of the property in question."
From the above language, defendants strenuously contend before this court that our esteemed brother below completely disregarded all testimony offered by them touching upon the value of the property in dispute; that such actions on his part were erroneous and contrary to the well established jurisprudence of our state. In support of this contention, we have been cited to the following cases: Housing Authority of New Orleans v. Boudwine, 1954, 224 La. 988, 71 So.2d 541; State v. Landry, 1951, 219 La. 456, 53 So.2d 232. We are in complete accord with the general principle of law as enunciated in the cited cases that, in arriving at an award of just compensation, the opinions of all qualified expert witnesses should be considered and such evidence should not be arbitrarily rejected. However, if the expert testimony impresses the court unfavorably it may be disregarded. *631 State of Louisiana through Department of Highways v. Hub Realty Co., 1960, 239 La. 154, 118 So.2d 364, and the cases cited therein.
From our study of this record, we are not convinced that the district court arbitrarily refused to consider the evidence introduced by the defendants. We interpret the opinion of the district judge to mean that in his opinion "no legally qualified appraisers testified for the defendants", but he gave consideration to the testimony of all the witnesses, and took into consideration their experience, knowledge of the facts, and their reasons. We can find no fault with such methods. While the experts tendered by the defendants might not have been classified "legally qualified appraisers", their testimony was rightfully considered by the court, but the weight given such testimony was gauged accordingly.
There is no dispute as to the law applicable to the amount of compensation due herein. LSA-R.S. 48:453 provides as follows:
"The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
"Damage to the remainder of the property is determined as of the date of the trial.
"In either case the defendant has the burden of proving his claim."
In connection with estimating the value of the property, LSA-R.S. 19:9 provides as follows:
"In estimating the value of the property to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."
The amount due the owner of property in expropration proceedings is the "market value" or the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put, as well as all factors which leads to a replacement of the loss caused by the taking. This means substantially that the owner should be placed in as good a position pecuniarily as he would have been had his property not been taken. State through Department of Highways v. Ragusa, 1958, 234 La. 51, 99 So.2d 20, and cases cited therein.
It is likewise the general rule that where the expropriation involves a "partial taking", the land owner is entitled to severance damages to any remaining property. In the event such is allowable, the measure of compensation is the diminution in the market value of the remainder of his property as damages. Thomas & Warner, Inc. v. City of New Orleans, 1956, 230 La. 1024, 89 So.2d 885, together with the cases cited therein.
Where severance damage is claimed by the land owner to the remaining property, it is the established law of this state that special benefits to the remainder of such property may be set off against such damages. Louisiana Highway Commission v. Grey, 1941, 197 La. 942, 2 So.2d 654; State v. Cooper, 1948, 213 La. 1016, 36 So.2d 22.
After a careful review of the entire record, we are of the opinion that the lower court has correctly applied the law to the facts of this case as we have found them. We can certainly find no error in that portion of the award made for the property actually taken. Inasmuch as the judgment did not include anything for damages to the remainder of defendants' property, we have given this matter careful consideration. After an analysis of all the testimony, we have concluded as did the lower court, that the property remaining was worth more after the taking than before. Under the cases previously cited by us, this should be taken into consideration and the *632 defendants are not thereby entitled to an award for severance damages.
Having found no manifest error in the method used by the lower court in fixing the amount due the defendants, the judgment of the lower court is affirmed at appellants' cost.
Affirmed.

On Rehearing
AYRES, Judge.
A rehearing was granted herein for the purpose of reviewing the award of compensation payable to defendant by reason of the expropriation of his property.
Defendant contends primarily that the method by which the appraisers for the State arrived at their conclusion, as to the value of the property, through the application of the so-called "gross-multiple formula," was unsound and erroneous, in that the formula contemplates the use of comparable property, whereas the properties given consideration by the appraisers for the State were not, in fact, comparable to the property under consideration.
There was obviously allotted to each of the four residences located on the tract, a frontage on Caddo Street of 30 feet. Also, the property is located in the central business district zoning, under Classification B-4, in which no colored rental property may be reconstructed. The record discloses no other or better use to which the property may be put.
The residence was of a superior character to other colored rental properties in the City. The house contained six rooms, a bath, a large hall, and was equipped for hot and cold running water. While approximately 50 years old, the property had been constructed of excellent material and was well preserved. The house, constructed on a concrete foundation, had concrete steps, was painted, and, in general, was in an excellent state of repair. The property may be properly classified as top-quality colored rental property and, being in good physical condition and located only a short distance from the downtown business section, it was in demand for rental purposes.
In arriving at a value for defendant's property, the State's realtors, Lawrence L. May and O. L. Jordan, selected five pieces of property to use as "comparables." These included sales from Colossus Company to Q. T. Hardtner, Jack Levy et al. to Josephine Mayfield, Lester C. Haas to the City, Cassierre to the City, and Ben Bernstein et al. to the City. With reference to the sales to the City of Shreveport, the appraisers for the State were aware of the fact that the City has the power of condemnation and that ordinarily evidence of these sales would not be admissible. Justification for their use was based on the contention they were nevertheless favorable to defendant.
The term "just and adequate compensation" generally denotes market value, that is, a price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. State Through Dept. of Highways v. Barrow, 238 La. 887, 116 So.2d 703; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; State v. Crockett, La.App.2d Cir., 1961, 131 So.2d 129.
However, the rule implies a free, unfettered, open market and not sales restricted and limited to, or influenced by, the power of the compulsory process of expropriation. State v. Crockett, supra. Therefore, such of the sales as were made to the City in the instant case may not be said to be comparable sales under ordinary and usual circumstances. Nevertheless, distinguishing characteristics of all these properties from that of the defendant may be pointed out.
The property acquired by Hardtner from Colossus is located east of the intersection of Mansfield Road and Texas Avenue, approximately three miles distant from defendant's *633 property. The property consisted of 13 houses which were sold for a price of $30,000. The houses consisted of three rooms each. They were without running water, hot or cold, and were thus not equipped with indoor plumbing. (Jordan testified that the Gras house was twice as large and contained six rooms and a bath.) Only six of the houses fronted on Texas Avenue, a paved street.
The properties involved in the sale from Levy to Mayfield, located on East Dalzell just off the Youree Drive extension, about two miles distant from the Gras property, were likewise of three-room construction, of a "shotgun" type, unequipped with inside baths, and located on an oil-surfaced street.
The properties involved in the sale from Haas to the City were located on Fairfield Hill, but Mr. May testified they were actually on no street at all. The properties were not equipped with inside plumbing and consequently were without running water, either hot or cold. The 12 houses were, however, served by four outside toilets. The houses were badly in need of paint.
The Cassierre property consisted of three single-family, three-room colored rent houses, 14.3 × 38 feet, with front and side porches measuring 4 × 10 feet each. The property was not on a paved street nor served by a concrete sidewalk, and had neither hot nor cold running water.
The Bernstein property consisted of four two-room houses, no inside baths nor running water. They were neither on nor served by a paved street or sidewalks.
The "gross-multiple formula," or the gross-rental multiplier, approach in the appraisal or evaluation of property in expropriation matters is an approved approach, but contemplates the use of comparable property. For instance, on page 328 of The Appraisal of Real Estate, by the American Institute of Real Estate Appraisers, it is said:
"The comparison process is also concerned with economic comparability. Income properties may be compared on a gross multiple basis. For instance, in appraising a standard type of apartment building, an anlysis of comparable sales may show that such sales have been made at a fairly uniform multiple of the gross income. This could be carried through and applied to net income. But at that point the process would more properly be considered part of the income approach, whereas comparisons of gross income are part of the market data approach.
"The process of gross income multiplication converts gross income into a value estimate by means of one operation, by multiplying the gross income by a factor. For example, if in a specific district comparable unfurnished apartment houses, providing the same kind of service, were moving on the market at a certain multiple, such as 7 times the gross rental plus services, then the value of the subject property could be said to be 7 times its income schedule. If single-family residences were selling at prices equivalent to 125 times the monthly rental unfurnished, then this multiplier is said to apply to other comparable single-family homes in the area."
By the use of the gross-rental multiplier, as determined from the properties used as "comparables," a gross-rental multiplier of 6.25 was found by the State's appraisers to be applicable to defendant's property and, from this, it was calculated that the residence had a valuation of $2,625.00 and the land taken, at a rate of 33 1/3 cents per square foot, of $52.43, which, together with $100.00 for shade trees, amounted to $2,777.43. From these calculations, an estimation was made of the compensation due the defendant to be the sum of $2,800.00.
While the preferable rule in the determination of the value of property expropriated is evidence of sales of similar or *634 comparable properties in the vicinity, where, however, the record contains no satisfactory evidence of sales comparable to the property involved, as the record here fails to disclose, ascertainment of the true value must be sought by a consideration of other factors and circumstances. State Through Dept. of Highways v. Stoer, 238 La. 718, 116 So.2d 498; State v. Ferris, 227 La. 13, 78 So.2d 493; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State v. Crockett, La.App. 2d Cir., 1961, 129 So.2d 131.
Among such other factors is the rental-in-come approach method which may be resorted to insofar as it lends assistance in a determination of the fair market value of the property. Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853.
This approach, through the utilization of the gross-multiple factor, was employed by plaintiff and its appraisers. This method, as we have heretofore pointed out, is inapplicable for the reason that the "comparables" are clearly distinguishable from that of the subject property. Therefore, other approaches must be resorted to in order to determine the just and adequate compensation to which the defendant is entitled for the property taken. One of such other approaches is the reproduction-cost approach. This approach may be resorted to where the subject property contains immovable improvements, where, if the improvements are aged, an adjustment must be made for depreciation. Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40; Texas Pac.-Missouri Pac. Terminal R. Co. of New Orleans v. Rouprich, 166 La. 344, 117 So. 273; State v. Crockett, supra.
In the utilization of this last-mentioned approach, we have the testimony of B. J. Whitaker. Whitaker is a member of the Associated General Contractors of America and is well known and recognized in this area as a building contractor. After making a careful and thorough inspection and examination of the property herein concerned, Whitaker concluded that the improvements on the property had a replacement cost of $8,310.20. He found the house to be a good, sound structure, far above the average house of its type. Because of the age of the house, an estimate was made that it would cost $3,324.08 to replace the plumbing and electrical work in the building, replace the sheetrock on the walls and ceiling, and install the hardware and miscellaneous items in order that the house would be placed in first-class condition for another 20 to possibly 30 years of use. This sum was approximately 40% of the value of the building as reconditioned. Hence, the present depreciation allowance was accordingly calculated and determined, leaving $4,986.20 as the value of the house at the time of its expropriation. This approach, we think, under the facts and circumstances disclosed by the record, is a fair and satisfactory approach in arriving at the valuation of the property.
Moreover, the appraisal is supported by the estimations made by defendant's witnesses. For instance, John U. Norfleet, who, as the active manager of 175 colored rental units in the City of Shreveport, 26 of which are within two blocks of the subject property, and who has an experience of 30 years in the business, after an inspection, appraised the improvements upon defendant's property as $6,345.90. Fred Wappler, who, at the time of the trial of this case, owned, and had under his active management, over 100 rental units in the City of Shreveport, after making an inspection of defendant's property, placed a value on the house of $6,764.57. He had been engaged in the business since 1908. Gilbert D. Peters, a realtor of 18 years' experience, having under his active management at the time of trial over 300 units of colored residential property, was in agreement with the evaluation made by Whitaker, whom he assisted in making the appraisal.
The evidence supports and warrants a conclusion that the value of the land actually taken had a value of $0.75 per square foot. An allowance will be accordingly made in the sum of $117.97.
*635 The qualifications of these witnesses as experts are questioned by able counsel for the State, who say that the opinion of a witness is worthless without a proper foundation and facts to substantiate it. We are in complete accord with this principle. However, we cannot conclude that these witnesses are not experts in the matters for which they were called to testify, or that their testimony should not be given consideration. These witnesses have had long, active experience in the business in which they have obviously made a success. They have, with their labor and money, "backed" their opinions and judgments. They may not be the most experienced "experts" as witnesses, but, in our opinion, they are experts in the matters for which they were called to testify, notwithstanding the fact they may not have been "schooled" nor learned eo nomine in the latest intricate and scientific methods and approaches to appraisals. Experience has been said to be a great teacher. Knowledge acquired from practical experience is not to be discounted on that account. Qualification of the witnesses as experts in the matters upon which their opinions were sought was, in our opinion, amply and sufficiently established.
In expropriation proceedings, the principal object as concerns the owner of the property is his replacement in as good a position pecuniarily as he would have been had his property not been taken. State Through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20; City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445. Pursuing this purpose, the defendant sought damages to the remainder of his property in the nature of consequential damages occasioned by the taking. The allowance of such damages in proper cases is well established. In this case, counsel for defendant points out that the remainder of the property on which the expropriated residence was formerly located, due to its size and the restrictive classification of the area in which it was located, had been greatly diminished in value through the expropriation. This contention is not without some justification. However, we do not find that the amount of such damage has been established by sufficient and adequate proof to support an allowance therefor. Hence, this item of defendant's claim must be rejected.
For the aforesaid reasons, we find that defendant's residence had a value of $4,986.12 and the land actually taken, $117.97, at the time of the taking, and that, accordingly, the just compensation payable to defendant for his property is the sum of $5,104.09.
The judgment appealed should be and it is hereby, amended to increase the award in defendant's favor to the sum of $5,104.09, and, as thus amended, the judgment appealed is affirmed, except that the plaintiff is taxed with all such costs as is by law assessable against it.
Amended and affirmed.