REID, Judge.
This is an expropriation suit by the State of Louisiana, through the Department of Highways to expropriate a tract of land belonging to Joseph E. Ebrecht on State Route 22, said land being a portion of Section 59, Township 7, South Range 7 East, and is identified on the strip map filed by the plaintiff in this suit as Parcel 51.
The total area in the defendant’s property -was 4.36 acres of which the petitioner has .expropriated 3.263 acres leaving a re-mainder of 1.007 acres. The residence ^located on this property was a single U/2 .story frame studded house built on a con- , Crete slab with cypress siding, containing ;7 -rooms, 2 baths and a screen porch, .-asbestos slate Dutchlap roof, built in approximately 1951. The interior walls were . sheetrock on sheathing, had electricity, had : its water supply from an adjoining well, a . septic -tank and butane gas and space heaters. The house contained two toilets, , two tubs, one sink, one shower and one 30 ^gallpn hot water tank. There were wooden cabinets in the kitchen, linoleum tile floors in the kitchen and baths, with imitation type wainscoting in the baths. The porches were screened and there were concrete floors, front and side. There were asbestos tile floors on five rooms down stairs, 9 foot ceilings, oak floors in the two rooms up stairs, and there was a fire place.
The plaintiff secured a Judgment of expropriation and deposited the sum of $16,860 as an estimate of just compensation for the land and improvements taken. Defendant filed an answer praying for compensation for the land and improvements together with damages in the amount of $45,500. The case was tried on the merits and Judgment rendered awarding the sum of $28,273 less amount deposited in the Registry of the Court, in the amount of $16,860 leaving a balance due of $11,413 with legal interest from the date of expropriation of this property, which was on January 20, 1958 and all costs of this proceeding. The State has appealed from this Judgment.
The only issue before the Court is the value of the land and improvements taken and the damages to the remaining property. The first question to be determined is the ability, character and qualifications of the various experts who testified in this case.
The plaintiff tendered the record which is the State’s prima facie case for the plaintiff. The defendant then had the burden of proving the estimate prepared by the Highway Department wrong and his estimate correct.
The defendant used three witnesses besides himself to testify as experts. The first of these was Mr. Polk Hebert. Mr. Hebert was at the time Resident Manager for Marshall Stevens Evaluation Engineers for Louisiana and Mississippi, and President of Industries Service, Incorporated. He further testified that he had been a fee appraiser since 1945 and he had 16 years of field work in construction, buying of right-of-ways estimating, and had a college education. He further testified that he had *632 taken courses at L.S.U. for further education of appraisers. He had made approximately 1,500 appraisals in the Parish of Tangipahoa of which 1,000 were in the Hammond-Ponchatoula area. He had made appraisals in addition for the Veterans Administration, for the Reconstruction Finance Corporation and some for individuals for establishments of insurable values. He had been District Manager of the Louisiana Power and Light Company in Tangipahoa Parish and was familiar with practically all of the property appraised and with the inhabitants of the said property. Mr. Hebert presented a valuation on the residence of $17,377.60. Pie placed a total evaluation on the land itself of $9,200.
While he did not state in detail the comparables that he used he did testify that he was familiar with certain parcels of property which were comparable in value to this property.
The next witness was Mr. Thomas G. Womack Sr., of Hammond, Louisiana. Mr. Womack was a real estate broker in Ham-tnond and had been one there for eleven or twelve years. Pie had been identified with real estate as owner and operator of real estate business for many, many years. In addition to that he was a right-of-way agent for State Department of Highways during the administration of two Governors. He had worked for Louisiana Power and Light Company as an appraiser, testified in condemnation suits in this Parish. He had developed real estate subdivisions and bought and sold real estate for many years in the ITammond-Poncha-toula area and had been accepted numerous times as an expert. Mr. Womack appraised the building at $23,808 being $12 per square foot for ld260 square feet on the ground floor of the building totaling $15,120; $6,480 for the second floor of 648 square feet and the sum of $2,208 for the concrete porches of 368 square feet at $6 per square foot. Pie placed a valuation on the land and shrubbery that was on it at $6,000. Mr. Womack said he was familiar with several sales which were handled by him which he considered comparable to the subject property. Other than that he used no comparables.
He testified that he could get a sale on the property for the figures that he appraised it based on his years of experience as a real estate agent and developer.
The next witness tendered by the defendant was Robert E. Perrin Sr., of Poncha-toula. He testified that he had been in the building and construction business for 50 years. Pie further testified that he was a building expert for Ponchatoula Homestead Association and appraised property on which the Association would make loans. Mr. Perrin placed a replacement value on the house of $22,760. He put a valuation of $6,000 on the timber and the land.
The next witness for the defendant was the defendant himself, Joseph E. Ebrecht. He testified that the residence was built on the front portion of the property and that the remaining portion of the property does not have any timber and was just a field or part of it is a field. He further testified that it was not suitable for the type house he had built. He testified that the house was built of tide-water cypress and that such lumber could not be obtained at this time. He testified that this was choice cypress, costing some $300 to $400 per thousand. He was able to get this cypress by virtue of his connection with the Cypress Company. He further testified that the building had four bedrooms, two baths, a den, a hall, two porches, a storeroom, and a large living room. The grounds had been landscaped and it was set in a grove of pine trees. It is heated by butane gas and electricity; that he had an artesian water system with a pump and that it was a most desirable piece of residential property. This property, by the way, is located just west of the city limits of the Town of Ponchatoula on the Springfield Highway. On cross examination Mr. Ebrecht testified that he had sold 6 acres of land to the Louisiana Power and Light Company for the sum of $3,600 on which to put a micro *633 wave tower. He testified that he gave it to them at a bargain price because it would help the community as a whole and it was not a sale which he would negotiate in an ■ordinary real estate transaction.
The plaintiff’s two experts were Mr. Max Derbes Sr. of New Orleans, and Mr. Car-xoll Trahan of Hammond.
Mr. Derbes has been in the real estate appraisal business since 1934, a member of the American Institute of Real Estate Appraisers; a member of the Society of Industrial Realtors, member of the Brokers Division of the National Association of Real Estate Boards and member of New Orleans Real Estate Board and Louisiana State Board. He has lectured on Appraisal topics at Tulane and Loyola Universities. He had a very impressive list of appraisal clients, including the plaintiff in this suit. Mr. Derbes placed a value on this home of $13,379. He figured the replacement cost at $7.50 per square foot, or $14,865. He figured minimum depreciation of 10% or $1,486. He figured the trees, shrubbery, lawn and dog houses at a total of $483 giving a total value to all improvements of $13,862. He figured the timber at $1,000 based on estimate made by Mr. Murray Brashers. He figured the land actually used as 3.263 acres at $600 an acre, or a total of $1,958. This gave a total valuation of $16,820.
Mr. Trahan stated that he had been in the real estate business since 1925, and before that he had negotiated for the sale and purchase of property for his own account. He had no special training in real estate appraisal except experience. He was presently working for the Highway Department as a Senior Right-of-Way Agent, and was negotiating and appraising right-of-ways for the Highway and title research and this was the first time he had testified in court. Mr. Trahan appraised the property at $16,722. He used practically the same figures, the same method of arriving at his estimate, and the same comparables that Mr. Derbes used, in fact, they collaborated on making the appraisal.
The Judge of the lower Court fixed the following valuations to-wit:

As in all of these highway expropriations there is a wide diversity of valuation in the appraisements made. The attorney for the Highway Commission in his oral argument contended that the numerous boards, seminars, education and experience of Mr. Derbes qualified him as an expert whose opinion should be accepted by this Court.
He further commented that the Appraisers for the defendant had taken no special course of study, attended no seminars, had no experience qualifying as appraisers and their appraisals were made on guess work.
The appraisers submitted by the defendant do not have the educational qualifications and benefit of the large and numerous courses of study that Mr. Derbes has had but they were men of standing in the community, of long experience in real estate, building, were familiar with the lands in the community and the people who live there and could give a fair appraisal of the property on their experience and knowledge of real estate in this community.
The Court is bound to take into consideration the opinion of each witness qualified and accepted as an expert on the question of value of the property expropriated, when it happens to be well grounded from sincerity and good reason. Housing Authority of New Orleans vs. Boudwin, 224 La. 988, 71 So.2d 541; Louisiana Highway Commission vs. Gray, 197 La. 942, 2 So.2d 654; State Through Department of Highways vs. Ragusa, 234 La. 51, 99 So.2d 20.
*634 “A witness who lives in neighborhood, and owns land and has bought and sold and knows of other sales in the neighborhood and is acquainted with the property being expropriated, can testily as to the value of such property.” State vs. Barbe, 209 La. 185, 24 So.2d 372.
Most of these were cited by both attorneys in this suit. The Court cannot ignore the testimony of the defendant’s appraisers and must take them into consideration together with the appraisers offered by the plaintiff in arriving at a fair value of the property taken in this suit.
“The most profitable use to which land can be put, by reason of its location, topography and adaptability, will be considered, in condemnation case, as bearing upon its market value.”
“Criterion to be used, in expropriation proceeding, in arriving at basis for assessment is market value; that is, price which would be agreed ttpon at the voluntary sale between willing seller and purchaser, taking into consideration all of available uses of land.” Koerber vs. City of New Orleans, 234 La. 433, 100 So.2d 461.
There seems to be no question that the best and highest use of this land would be residential purposes. The pictures offered in evidence bears this out as there is no dispute that the home is built in a wonderful setting of trees and enhanced with shrubbery.
With reference to the house the lower Court accepted the valuation placed on the same by Mr. Robert Perrin which was $22,760. He did not take into consideration any depreciation. The house was some five or six years old and the lower Court allowed a depreciation of 5% fixing the value of $21,622 for the residence. The Court commented that there is always some depreciation because of normal use and the further facts that more modern accessories and materials are being put on the market every year. She states, however, that in view of the excellent materials and the maintenance of the house in first class condition, this depreciation would be negligible. There is no hard and fast rule for depreciating property. The depreciation figured by Mr. Derbes, appraiser for the State is 10%.
We believe that Mr. Perrin, Builder, Construction Worker, and Contractor of some fifty years experience is better able to judge the replacement value of the residence than Mr. Derbes whose basis is on average of construction of homes in New Orleans.
We see no manifest error in accepting Mr. Perrin’s estimate of the replacement value of the house, less 5% depreciation, and will therefore fix the value of the house at $21,622.
This brings us to the land and timber. Mr. Womack and Mr. Perrin both fixed the value at $6,000. Mr. Hebert fixed a value on the land, timber and shrubbery at $9,200. Mr. Derbes estimated the timber at $1,000 and 3.263 acres actually taken in the right-of-way at $600 per acre of $1,958. He figures the trees, shrubbery, lawn, dog houses, at $483 which would be a total of $3,441 for these items. Mr. Derbes used several comparables in fixing his valuation at $600 per acre. He first used a sale by Natol Joseph Frank and Peter John Re to the Seventh Ward Hospital Service District, dated July 21, 1956 recorded COB 220, folio 150. This sale covered about 2i/i acres of land on Highway 51, about 2i/£ miles from the Ebrecht property on which there were two residences. The sale price was $15,000 which had an over-all price per acre of $1,150. He deducted 15% based on his own idea that a public body paid above market value for property at least that much. We know of no rule or law which holds that in sales by private individuals to a public body that public bodies pay 15% above the normal price because they are public bodies. He next uses as a comparable sale Guzzardl *635 Loyd Goudeau to Jennie Jacobs, dated June 20, 1957, COB 220, folio 61. This property is located about 2J4 miles from the subject property. The sale was for $2,800 and included a two room house on the Springfield Road. The third comparable is a sale from Joseph E. Ebrecht to Louisiana Power and Light Company of six acres of land located some 233 feet from the subject property to the west, which sale was dated March 5, 1924, recorded COB 211, folio 195. This is on a basis of $600 per acre. This is the sale that Mr. Ebrecht testified was sold to the Louisiana Power and Light Company for a purpose and at a price below what he would have sold to •anyone else.
This next comparable is from B. Leary to Bobby Brown Jr., dated January 22, 1957, which is a lot on black top street in Ponchatoula. The lot was 87 x 137 feet for '$600. His next comparable is the sale of entire property, land and buildings, of a 'brick home and store building on Highway 51 in Natalbany which is 4.6 miles from the heart of Hammond. It was sold on January 7, 1957 by Mrs. M. L. Jones and Mrs. H. L. Swinney to Arthur Guillory for $22,000. The next comparable is a sale by Sam Valente to Joseph P. Gomilla on Range Road dated January 14, 1957 in • COB 222, folio 253. This is a 2\acre tract which is located on Range Road, a highway running from Hammond to Ponchatoula, parallel with and about one-half the distance between Hammond and Ponchatoula and would be approximately four or five miles from the subject property. The consideration in this sale was $6,355. The next comparable is two acres of ground on the Loranger Highway black top highway, three miles northeast of Hammond. It was a sale from W. E. White to Hezzie Davis for the price and sum of $9,500, dated November 2, 1955, COB 217, folio 178. Mr. Derbes and Mr. Trahan stated that they •saw the property, but did not interview the •owner or get any of the details concerning same. In other words, he relied on the -public records together with his observations of the property. This was his market value approach in fixing his valuation on the subject property. It was brought out on cross examination that Mr. Derbes ignored several comparables in the vicinity which might have raised his appraisal. One was a sale by Dr. Doyle McGee to Arkansas Frozen Food Corporation of 11 acres on the Springfield Highway somewhere in the neighborhood of the Jennie Jacobs property. This property sold for $26,000. There was a very old frame residence upon it. Another comparable he ignored was a sale from Rosa Lee Wahden to Lionel C. Larue Jr. on May 27, 1955. .This property consisted of 7.46 acres of land and the purchase price was $9,000. He also ignored a loan from one Berner to Gulf Coast Investment Company for $11,150. According to testimony of Mr. Hebert this house was sold in 1955 and the size of the lot was 151 x 419 feet and 118 x 512 feet. The value of the residence was $10,550 and the value of the land was placed at $600. The Court believes that the sales from Mrs. Jones and Mrs. Swinney to Arthur Guil-lory, Plaintiff Exhibit P-7 and P-8, the sale from Sam Valente to Joseph Gomilla, Plaintiff Exhibit P-9 and the same from W. E. White to Hezzie Davis, Plaintiff’s Exhibit P-10 are not comparable to the subject property. The sale from Mrs. Jones and Mrs. Swinney to Guillory is located in Natalbany which is about 10 miles or more from the subject property. Natal-bany, in addition, is a one industry unincorporated village and would not in any way approach in value the subject property. The sale from Sam Valente to Joseph Gomilla, P-9, is not comparable to the subject property because it is too far removed, being on the east side of Illinois Central Railroad and in a less valuable location. The Sale from White to Davis of a residence on two acres of ground on the Loranger Highway is likewise too far remote from this property to be a comparable.
This leaves us the sale from Ebrecht to Louisiana Power and Light Company and *636 the sale from Goudeau to Jennie Jacobs and the sale from Leary to Brown. The sale from Leary to Brown is of a lot in the town limits of Ponchatoula, and we do not think it comparable. This sale from Ebrecht to Louisiana Power and Light Company was based on the number of acres sold and the total consideration paid; it is no question but six acres selling for $3,600 would be $600 per acre. However, there was only part of this property which was high land and the balance was swamp land. In other words, the part on the Highway or the front would have a higher value than the part on the back, so it is impossible to tell from this deed the exact value of the front portion of the Louisiana Power and Light Company property, which fronts on the Highway. In addition, Mr. Ebrecht gave a reason for selling at a low figure. The only other comparable left is the sale from Goudeau to Jennie Jacobs. We believe this valuation is overcome by the fact that Mr. Derbes ignored other comparables in the immediate vicinity where the value was a whole lot higher per acre.
Another reason why we do not feel Mr. Derbes’ valuation correct is because he makes up all estimates of the value of buildings and the land separate without interviewing or talking with any of the owners.
Mr Hebert testified that the real estate values in and around Ponchatoula and Hammond had gone up 150% in the past three or four years. He and Mr. Womack both used as comparables, sales they made or knew of and the prices, by virtue of their experience, they thought could be obtained for the property in arriving at the valuation they put on this property. Mr. Derbes had never handled any real estate sales in Tangipahoa Parish. We therefore believe the value of the acreage considering proximity to Poncha-toula of $6,000 is a fair value of this land. The lower Court accepted the value of Mr. Womack of the shrubbery in view of the fact that he counted the shrubs and made the valuation totaling $351. In regard to the damage to the remaining property there was 1.007 acres left which had a depth of 90 feet on the east side, and a depth of 200 feet on the west side. This odd shaped piece of land does have some value although defendant’s experts testified that it did not. The Court does not believe it would have any value for the use of erecting thereon a home such as the defendant had on the subject property. It does have access to the Wadesboro road by virtue of a twenty foot lane purchased by defendant from Mr. W. W. Bjorkgren. The lower Court took the plaintiff’s value of $600 per acre, and allowed a 50% depreciation in value, fixing a value of $300 to the remaining property.
The defendant has not answered the appeal and asked for any increase in the award. For these reasons the Court will Affirm the Judgment of the lower Court.