RSID, Judge.
This is an expropriation suit filed by the State of Louisiana through Louisiana Highway Department to expropriate a tract of land belonging to Paul W. Poche being triangular in shape, measuring 344 feet front on Wadesboro Road by a depth on the west side of 498.66 feet, being a depth of 595.98 feet on the east side and containing 2.028 acres.
The improvements on the property consist of a one story frame weather board house containing 6 rooms and bath, asbestos shingle roof and concrete block piers and the plumbing in the house consists of sink, tub, toilet, lavatory and side arm water heater. The house had concrete front steps, wood porches, asphalt tile flooring in the kitchen and bath, and beaded ceiling walls. The total area was 1,230 square feet and the house was approximately thirty years old. The auxiliary buildings consisted of an unfinished concrete block building, a 30 x 16 foot feed house and a 9x4 chicken house, a shed 10 x 15 feet and a lean-to shed 9 x 12 feet. There was located on the property a 400 foot water well and fencing and landscaping. The property contained a service station constructed of concrete blocks and stucco measuring 40 x 14 feet and a 32 x 9 foot galvanized iron building in the rear.
The Department of Highways deposited the sum of $11,822 in the Registry of the Court, being the value its appraisers placed on the property taken, and damage to the remainder of the property as a result of the taking.
The defendant filed answer asking that the award be raised to $23,450.
The case was duly tried and trial Court rendered Judgment in favor of the plaintiff and against the defendant for $16,640 less $11,822 deposited in the Registry of the Court, leaving a balance of $4,818 due the owner.
From this Judgment the plaintiff prose'--cuted this appeal.
This suit is a companion suit to one filed by the plaintiffs against Joseph E. Ebrecht No. 5245 on the Docket of this Court, 135 So.2d 630, that involved property located in close proximity to this property. The State used the same two appraisers as they used in the Ebrecht case, namely, Mr. Max Derbes Sr., and Carroll Trahan. The defendant used four appraisers, two of whom, Mr. T. G. Womack and Mr. R. E. Perrin Sr., were used in the Ebrecht case but defendant had two additional appraisers, Robert O. Farris and Ernest Wainwright.
The qualifications of Mr. Derbes and Mr. Trahan were listed in the Ebrecht suit and we do not see any necessity of listing them over again. Suffice it to say that Mr. Derbes had a long and impressive list of qualifications in the technical methods of appraisement as well as experience in the general real .estate filed but had no experience or knowledge of the market demands for real estate in the area of the subject property.
Mr. Trahan, an employee of the Department of Highways, had no technical training but only experience. He had three years experience dealing in business, combining real estate and insurance in Hammond, but had no personal experience in the Ponchatoula area.
We commented on qualifications of Mr. Womack and Mr. Perrin in the Ebrecht suit, briefly: Mr. Perrin had been a contractor for fifty years and had appraised real estate in this area for the Homestead Association in the area of Ponchatoula for the Resettlement Administration, and for individuals.
Mr. Womack had been engaged in buying and selling real estate for fifty years and had been for the past eight and one-half years located in Hammond and did considerable appraisal work in this area. In addition he worked for eight years *138 as a -Highway Agent for the Department of Highways, locating rights-of-way, securing deeds, and making appraisals such as was made in this case by the State Department’s appraisers.
Mr. Robert Perrin, an appraiser used by the defendant testified that he was a retail merchant and real estate broker, had been engaged in the real estate business in the Parish of Tangipahoa over twelve years, had occasion to handle the purchase and selling of various pieces of real estate in the Ponchatoula area and was familiar with land values in this area. He was an approved appraiser for the Veterans Administration and Federal Housing Authority all during the war. He has been used by the Ponchatoula Homestead Association, Hammond Building and Loan Association, the Guaranty Bank and Trust Company on occasion to make appraisals on which loans were made. In addition he was an approved appraiser for Jefferson Standard Life Insurance Company and made numerous appraisals on property for them in the Hammond area.
Mr. Ernest Wainwright, the other appraiser used by the defendant, testified that he resided in Hammond, had been in the building trade about forty years and the contracting business about twenty-nine years, and was a builder and constructor of homes and commercial buildings at the present time. In addition to that he did most of the appraising for the Hammond Building and Loan Association, and that he had been doing same for about sixteen years, and that loans were made on the basis of his appraisals.
There was a wide difference in the valuation placed upon the property by the two sets of appraisers.
The property herein taken is in the form of a triangle with a 600 foot frontage on the Wadesboro road and a 350 foot frontage on the Springfield Road. Mr. Farris placed a total valuation of $27,000 on the property based on its market value being the price he believed a willing purchaser would .pay a willing seller for the property. He broke this valuation down as follows: the dwelling itself was appraised at $10,500; he believed this was a conservative market estimate of the property in its depreciated condition. He placed a valuation on what he termed the commercial filling station and garage combination building, partially unfinished building that could be completed at a fairly reasonable price at $8,500. He estimated that the improvements on the property would bring a rental of between $250 and $300 per month and that he felt that he could secure a tenant for the house of Mr. Poche for between $100 and $150 per month.
He based his estimate of the monthly rental on the filling station property on the amount of gallonage that could be handled. He stated that he knew for a fact, that the next filling station to this property sold 162,000 gallons of gasoline •in 1957 which would bring a rental of some $500 per month.
He gave an evaluation of the land on which the dwelling was situated of $7,500. The valuation he placed on the filling station included the land upon which it was situated. He further testified that he used some comparables he was familiar with in the Hammond-Ponchatoula area. Fie gave no recordation data but discussed a house sold on the corner of the old Cov-ington Highway and Range Road in Hammond which had less land than this one which sold for $22,000. He used other comparables which he was familiar with, one a sale of a much smaller piece of property in Hammond on Flighway 51 of less than an acre, probably 200 x 180 feet for about $44,000 and another piece of property on Highway 51 between Hammond and Ponchatoula which he sold as use for a junk yard and on an acreage basis of $1,70(5 per acre. He used another comparable of a 100 x 150 foot lot sold for' around $8,000.
*139 Mr. Wainwright placed a valuation of $20,063, even, on the property. This did not include an artesian well on which he placed a valuation of $500. Mr. Wainwright further testified that he placed a value on the dwelling of $10,400 based on $8 per square foot plus the porch. He placed a value on the two and one-half acres of land at $2,600, of this he figured $1,600 as residential property and the other for the commercial property. He valued the shop building and filling station at $5,428 and fruit trees at $545, fencing and general yard improvements at $590. This together with the $500 for the artesian well makes up the sum of $20,063.
Mr. Perrin placed a valuation on the residence replacement at $10,400. The filling station and other out buildings he valued at $7,936. He valued the land and well, and shrubbery and improvements at $5,500, total $23,836.
Pie testified that he thought the residence would have a monthly rental value between $75 and $100 per month and that the filling station would bring in $200 per month rent.
He based his valuation of the land on what he thought or figured the market would pay at the present time. He used as a comparable a purchase of eleven acres further out on the Springfield Highway which sold, including the house, for $26,000. This is a sale referred to in the Ebrecht suit from Dr. Doyle McGee to Arkansas Frozen Foods, Incorporated. Mr. Perrin said that he was demolishing the house of Mr. Warren’s whom the Court knows as the head of the Arkansas Frozen Foods, Incorporated.
Mr. Womack placed the valuation on the entiré property at $26,700. He broke this down into the valuation of the dwelling, 13,000 square feet at $7 per square foot, making 'a valuation of $9,100; the filling station $10,000; balance of the land $5,-000, the artesian well at $500, the shrubbery and plants, $950; Three old out buildings at $1,000; two 500 gallon gas tanks $500; one butane tank $50; one partially constructed block building 20 x 30 feet, with 10 foot walls at $500.
Mr. Womack based his valuations on what he considered the property would bring in the open market, judged by his past experience in dealing with the same. He testified that the house would have a rental value from $85 to $100 per month. He figured that the rental value of the filling station and garage site to be from $175 to $200 per month. He listed the shrubbery and fruit trees would total $950. He further testified that he thought the valuation he placed on the dwelling of $9,100 was a conservative figure of its value in its present condition and at the present time. He further testified that the property could be used for either a commercial or residential site and that it was available for a subdivision. He further placed a value of 100 foot lots on Springfield Road at this particular location at about $3,000 each. On cross examination he said that his estimate for the dwelling house was not based on the replacement value. That the house could not be replaced for that amount of money. Pie arrived at the valuation by a square foot basis after taking into consideration the depreciation of the property in its present condition. He further testified that he was selling land at $1,000 per acre about one or two miles from Hammond and that he was selling lots just south of Hammond at $3,000 an acre. He testified to a sale to a man named Addison of an acre of land for $3,000. He sold two lots on the Covington Highway for $2,000 and that he did not base its valuation on the Poche property on an acreage basis. He stated that selling it on an acreage basis you could not get $5,000 an acre.
Mr. Derbes testified for the State, stating that there were actually only 2.002 acres in this tract according to the Plat filed in the record. The deed calls for 2.35 acres.
Mr. Derbes placed a valuation on the land of $750 per acre. He valued the *140 dwelling at $8,610, less depreciation of $2,152 and its present net worth at $6,458. He values the auxiliary buildings exclusive of the bar and service station at $1,535. He valued the service station at $5,603 less a depreciation of 66%'%, or leaving a present value of $1,868. He gave a total valuation of all improvements of $9,861 and the land at $1,521 or a total of $11,382. Mr. Derbes used as comparable the sale from Mrs. Jones and Mrs. Swinney to Arthur Guillory January 7, 1957 for $22,000. This property is located in the town site of Natalbany. Another sale he used was from Sam Valente to Joseph T. Gomilla, January 14, 1957 for $6,365. This property is situated on the Range Road, a black top highway leading from Hammond to Ponchatoula, about one-half distance between the two towns. This road is about one mile east of the Illinois Central Railroad.
Another comparable was the sale from W. E. White to Bessie Davis on November 2nd, 1955 for $9,500. This property is located about three miles northeast of Hammond on the Loranger Highway.
The next comparable was the sale from Guzzard Loyd Goudeau to Jennie Jacobs, Springfield Highway about two and one-quarter miles from the subject property. This property sold for $2,800 on June 20th, 1957.
These are all the comparables he used and he did not use the income approach to the property.
Mr. Trahan used the same comparables as Mr. Derbes. All of these comparables were used by the two State appraisers in the Ebrecht suit.
The Court does not consider the sale from Jones and Swinney to Guillory or the sale from Valente to Gomilla as true comparables because of the location.
The Guillory purchase was located in the town site of Natalbany, about eleven or twelve miles from the subject property. Natalbany is a sawmill town which once had a large mill. This mill has been out of existence for a good many years, but since that time a new mill has been in operation in this locality. This mill is considerably smaller than the first mill. The Gomilla purchase which is situated on Range Road is four or five miles northeast of the subject property. The subject property is just off of Highway 51 at the junction of Wadesboro and Springfield Roads. Highway 51 is the Springfield Road until it turns a short distance from the intersection of the Wadesboro Road. Property in this locality has a much higher value than property northeast of Poncha-toula. The sale from White to Davis is of property located on Loranger Highway three miles northeast of Hammond. It is some eight or ten miles from the subject property and in the locality where land values are much lower than it is where the subject property is located.
The only comparable left is the sale from Goudeau to Jacobs. We do not consider this a fair comparable because of the sale of Warren or Arkansas Frozen Foods property in its immediate locality which sold for $26,000 for eleven acres. In addition it was brought out in the Ebrecht suit that the Jacobs property was the subject of a loan by Jennie Jacobs to Florida Parishes Homestead Association for $6,500, dated February 27, 1957.
There were several other comparables in the Ebrecht suit which Mr. Derbes could have used, however, there is no reference to them in this suit.
The lower Court places a valuation on the dwelling based on a replacement value of $8 per square foot, or $10,400. This is based on testimony of Mr. Perrin and Mr. Wainwright and coincides with Mr. Womack’s testimony of $6 per square foot, and the value after taking depreciation for the property. The Court then figured a 25% depreciation from the estimate prepared by Mr. Perrin and Mr. Wainwright. It gave the residence a present valuation of $7,800. It is not too much difference *141 between this value and that placed by Mr. Derbes. Mr. Derbes figured the replacement cost at $7 per square foot for 1,230 square feet and depreciated it at 25%, the same as that used by the lower Court. The Court feels that the value of $7,800 for the residence is not out of line.
The lower Court in valuating the store, filling station and garage used the replacement value estimated by Mr. Wainwright of $5,428. She figured a depreciation of 40%. Mr. Derbes in his testimony appraised this building with a replacement value of $5,603 and subtracts i/z depreciation, having a present value of $1,868. Mr. Derbes, figures on the replacement value are higher than that of Mr. Wainwright and his depreciation is likewise greater. Using the Wainwright figures less 40% depreciation leaves the present value of $3,200 fixed by the lower Court. We believe this is a fair valuation.
With reference to the other buildings the Court took the average of the estimates by Mr. Wainwright, $500, Mr. Womack $500 and Mr. Derbes $561 and arrived at a value of $535.
Mr. Womack is the only one who places a value on two 500 gallon storage tanks and a butane tank. He valued the storage tank at $500 and the butane tank at $50. The lower Court figured a 50% depreciation and made a total allowance of $275. Artesian well located on the property was valued by Mr. Wainwright at $500. Mr. Wainwright figures the fencing by lumping it with the general yard improvements, but Mr. Derbes valued it at $160. The lower Court allowed this because it was not included in any of the other items.
In regard to the land the testimony shows that it can be used for both commercial and residential purposes. In addition it is susceptible to being divided. Mr. Derbes valued the land at $750 per acre or a total on the 2.08 acres of $1,521.
Mr. Trahan valued the land at $800 per acre totaling $1,620. They both used as their only comparable of the land value the sale of Joseph Ebrecht to Louisiana Power and Light Company .in May, 1954 of six acres for $3,600. This six acres of unimproved land was located further out from subject property on Springfield Highway. This sale was made some three and one-half years prior to the taking of this property and land values have gone up considerably since that time. Neither Mr. Derbes or Mr. Trahan considered the sale to Warren or Arkansas Frozen Foods of eleven acres including an old house for $26,000, nor a sale from the Hammond Homestead to Wallace Farris of 7.8 acres for $14,000 which is the valuation of $1,700 per acre for property located outside of Hammond, south on Highway 51.
There are two acres involved in the land and this Court in the Joseph E. Ebrecht suit fixed a valuation on 3.263 acres of $6,000. This figures roughly $1,800 per acre. The lower Court placed a valuation on the 2.02 acres of $3,200, a little under $1,600 per acre. The Court feels that because of its location the value of the land should be equal to^ that of the Ebrecht property. However, the subject property is in the form of a triangle which would depreciate its value to some extent, therefore, the Court feels that $3,200 is not manifestly erroneous for the land.
Since the issues in this case are mainly factual the Court does not feel disposed to overrule the Judge’s findings of facts.
“Findings of fact by trial judge will not be disturbed in absence of manifest error.” State through Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20.
“Opinions of qualified experts are of material aid and should be given weight and effect, particularly where those opinions [have] appeared to be well grounded from standpoint of sincerity and logic.” Id
For these reasons the Judgment of the lower Court is affirmed.