CULPEPPER, Judge.
Under the “Quick Taking Statute”, LSA-R.S. 48:441, et seq., the State expropriated a strip of defendant’s land. It fronts on Louisiana Highway 1 about one mile South of the city limits of Natchi-toches. At the time of the taking, the State deposited $3,446 representing the value of the land and improvements taken. Defendant answered, claiming a total of $40,461.05, including the deposit, for the land and improvements taken, and severance damages. The district judge awarded a total of $13,064.79, including the deposit. The State appealed, contending the award is excessive. Defendant answered the appeal, seeking an additional award of $5,200 for 13 grafted pecan trees located on the strip of land taken.
*305 The substantial issues are: (1) The value of the land taken; (2) The State’s contention that the district judge substituted his personal opinion for that of the expert appraisers; and (3) Defendant’s contention that an additional award should be made for the pecan trees.
THE AWARD FOR THE STRIP TAKEN
The strip of land taken measures 834.91 feet along the highway by a depth of 73 feet. It contains 1.384 acres and is part of a parent tract of 32 acres. Improvements on the land taken included about 1,000 feet of fencing, a cattle guard, a gravel driveway and the 13 pecan trees. At the time of the taking, the property was being used as a pecan orchard and pasture.
The State’s experts, Mr. Perry Futrell, Jr., and Mr. H. Loren Willet, used sales of tracts of agricultural land in the area as the basis for an appraisal of about $2,000 per acre for the entire parent tract. They did not value separately the frontage on the highway which defendant contends has a market value for commercial use.
The defendant’s experts, Mr. T. J. Stephens and Mr. Sam LaCaz, Jr., testified that the front 400 feet of the parent tract is best suited for commercial development and has a value of $8,435 per acre, or a total of $11,674.04 for the 1.384 acres taken.
The district judge found that the frontage does have a best and highest use for commercial development and awarded the value estimated by defendant’s experts. He rejected the opinions of the State’s appraisers on the basis that the sales which they used were not comparable. We find no manifest error in the award by the trial judge for the land taken.
The remainder of the award by the district judge consists of $669.75 in severance damages, $388 for the fence, and $333 for the cattle guard and driveway. These items are not in dispute.
JUDGE’S PERSONAL OPINION
The State’s contention that the district judge substituted his own personal opinion for that of the experts is based on a statement in the judge’s written reasons, dictated at the conclusion of the trial, that he was familiar with the property and its adaptability. However, the district judge stated: “While I am not substituting my own opinion for it, I do know that the comparables they used are not comparables in any sense of the word.”
 Although our jurisprudence prohibits the use by the district judge of his personal opinion in preference to that of the expert witnesses in these matters, State v. Moresi, 189 So.2d 292 (La.App., 3rd Cir.1966), and State v. Thurman, 231 So.2d 692 (La.App., 1st Cir. 1970), we are satisfied the district judge in this case did not do so. He expressly states in his reasons for judgment that he did not substitute his own opinion. And the record shows he had good and sufficient reasons to reject the testimony of the State’s appraisers and accept that of defendant’s experts.
THE PECAN TREES
In his answer to the appeal, defendant seeks an increase in the award by $5,200, representing the value of 13 pecan trees at $400 each. These are grafted pecan trees, about 30 years of age, and produce an annual crop. Based on the present condition of the trees, their potential life and annual production, defendant’s experts testified the trees had a value of $400 each. However, these experts admitted that if the property is used for commercial purposes, most of the trees must be removed, and consequently the trees add nothing to the value of the property for its highest and best use, which is commercial. Thus, the trees had value only for the continued use of the property as a pecan orchard.
Under these facts the district judge correctly held that since the highest and best use of the property is for commercial *306 purposes and the pecan trees contribute nothing to the value for such use, no award can be made for the trees. The same rationale was applied by this court in State, Department of Highways v. LeBlanc, 254 So.2d 95 (La.App., 3rd Cir. 1971), where the highest and best use of the property expropriated was for commercial purposes, and the only improvement was an old frame residence. The building had a value of about $7,500 for residential use but contributed nothing to the value for commercial use, except a salvage of $1,000. We held, without discussion because the issue was not raised, that only the salvage value of the residence could be recovered. See also State v. Kemp, 141 So.2d 487 (La.App., 1st Cir. 1962), in which the court held that since the existing apartment building contributed nothing to the best and highest use of the property for commercial purposes, only the salvage value of the building could be awarded.
The rationale of this rule is simply that the landowner is entitled to the fair market value of his property, for its best • and highest use, at the time of the taking. If the property is also suitable for a less valuable use, but the two uses are mutually exclusive, only the value for the highest use is awarded. The values for the separate but mutually exclusive uses cannot be cumulated. See the' discussion in 1 Orgel On Valuations Under Eminent Domain, 138 et seq., § 28.
In the present case the highest use is commercial, and the less valuable use is as a pecan orchard. The two are mutually exclusive. If an award were made for these trees which contribute only to the less valuable use, the result would be that the landowner would receive a summation of the values for each separate use.
The landowner relies on LSA-R.S. 48:218 which provides in pertinent part:
“In expropriating lands for rights of way, if any improvement of the landowner or any crops upon the land are damaged or destroyed by the location of the right of way, the owner may recover compensation, in addition to the compensation for the property or the right of way, for the actual injury to or destruction of the improvement or crop.”
Defendant cites State, Department of Highways v. Williams, 210 So.2d 616 (La.App., 2d Cir. 1968), and Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139 (La.App., 2d Cir. 1969), for the proposition that an orchard of grafted pecan trees which have been planted is a “crop” within the meaning of LSA-R.S. 48:218 quoted above.
We have no quarrel with the Grayson case. There, the defendant Levee District enlarged a drainage channel. Forty-one pecan trees in defendant’s orchard were destroyed. The court held that although there was no expropriation or appropriation, the plaintiff landowner was entitled to recover the value of his pecan trees which were destroyed during the construction work. The case did not involve an award for “improvements or crops” damaged or destroyed by the location of a right of way under LSA-R.S. 48:218. Hence, the Grayson case is readily distinguished from the present matter.
However, with all due respect to our brothers of the Second Circuit, we cannot agree entirely with their decision in State, Department of Highways v. Williams, supra. In that case, the Department of Highways expropriated 19 acres on which 30 grafted pecan trees had been planted as an orchard. The court held that “grafted producing pecan trees from which are regularly gathered pecans in paying quantities are ‘crops’ within the meaning of LSA-R. S. 48:218.”
 In Williams, the court relied on State, Department of Highways v. Henderson, 138 So.2d 597 (La.App., 3rd Cir. 1962) in which this court held that nursery stock, which had been planted and cultivated for the purpose of later removal from the soil *307 and sale, was a “crop” within the meaning of LSA-R.S. 48:218. We cannot agree that grafted or planted pecan trees are the same as nursery stock. The pecan trees themselves are not a “crop” in the sense that the nursery stock was a “crop” in the Henderson case. The trees only produce the crop, which is pecans. Within the meaning of the statute, the trees constitute only an “improvement”, similar to a building or a fence.
The distinction between an “improvement” and a “crop” is important, because the landowner is entitled to compensation for any crop on the land which is damaged or destroyed. For instance, if a growing crop of cotton is taken or damaged, the landowner is entitled to the value of the crop at the time of the taking. In the present case, the landowner would be entitled to the value of any crop of pecans which was damaged or taken. But the trees themselves, like the stalks on which the cotton grows, are not the “crop”.
Our Supreme Court has not ruled on the question of whether grafted or planted pecan trees constitute an improvement or a crop. In Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881 (1955), the court held that native pecan trees, which were not planted, were neither “improvements” nor “crops” within the meaning of LSA-R.S. 48:218. The court implied that if these had been grafted trees, which were planted for the purpose of raising pecans, a different result might have been reached. But the Glassell case certainly does not even imply in dicta that grafted or planted pecan trees constitute a “crop” within the meaning of the statute.
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.
DOMENGEAUX, J., dissents in part and assigns written reasons.