COVINGTON, Judge.
In this expropriation proceeding, the State of Louisiana, through the Department of Highways, expropriated two vacant, rectangular shaped, parcels of land situated in St. Tammany Parish, Louisiana, owned by the defendants-appellees, Henry J. Miltenberger and Barbara Ellis Milten-berger, husband and wife. Each parcel fronted on the east side of U.S. Highway 190, about 3V2 miles south of the city of Covington, Louisiana. The two parcels were separated by the entrance to King’s Forest Subdivision, a boulevard entering into a residential area. The parcel lying south of the entrance had a frontage of 343.10 feet on the highway, with a long side (south) depth of 335.00 feet, and contained approximately 108,600 square feet. The north parcel had a frontage of 343.10 feet on the highway, with a long side (north) depth of 282.40 feet, and contained approximately 89,596 square feet. The highest and best use of the property before the taking was for highway commercial purposes.
The expropriation involved a partial taking, the part taken from the south parcel being designated as 3-B-3 and -the part from the north parcel as 3-B-4. After the taking, the south parcel contained approximately 53,700 square feet, having a frontage of 343.10 feet on the new service road, 403.10 feet from the controlled access point. The north parcel was left with approximately 34,700 square feet, having a frontage of 343.10 feet on the new service road, a short distance behind the controlled-access fence.
The subject parcels were taken for the purpose of widening U.S. Highway 190 and for building service roads in connection with controlled access at the interchange of U.S. Highway 190 and Interstate Highway 12.
The Department deposited the sum of $55,704.00 in the registry of the court as the estimated just compensation for the property taken.
In answer to the expropriation proceeding, the defendants placed at issue the value of the property taken, the question of severance damages and damages to improvements.
After trial, the district court found the area of land taken to be 54,911.20 square feet for Parcel No. 3-B-3 and 54,896.00 square feet for Parcel No. 3-B — 4, or a total area of 109,807.20 square feet. The district court determined just compensation to be $0.75 per square foot, or the sum of $82,-355.00 as the value of the property actually taken. Further awards were .made, consisting of $4,735.20 for the improvements and $36,465.00 as severance damages. Thus, a judgment in the total amount of $123,-555.20, subject to credit for the amount deposited, was rendered in favor of the defendants. Expert witness fees of $1,200.00 to Stevenson and $1,500.00 to Pa-tecek were also awarded.
The Department appealed, contesting the amount of the award for improvements, the award of severance damages and the *708 amount of the expert fees. The award for the property actually taken is not contested. The landowners answered the appeal, seeking an increase in the severance damages.
Regarding severance damages, the Department’s complaint is that the trial court erred in awarding them at all in this case, and particularly objects to the trial court basing said award on the testimony of Frank J. Patecek, defendants’ expert.
Based upon Patecek’s report, the trial judge determined that before the taking each parcel had a frontage of 348.10 feet on U.S. Highway 190, with free and unrestricted ingress and egress to the highway along the entire frontage. After the taking, the remainders no longer have frontage on a well-travelled highway; but instead, they now front on a dead-end service road, with mostly local traffic and but a fraction of the vehicular traffic that a major highway would have. The trial court found that this adversely affected the value of the parcels and their use as highway commercial property. In addition, the judge found there would be a control of access between the remainders and the highway. In relation to the highway, the remainders will be situated behind a chain-link fence, an open drainage ditch on the west side of the access road, the access road, and an open drainage ditch on the east side of the road. The judge concluded that these factors considerably decreased the ease of access to the highway from the remainders and increased the difficulty of vehicular traffic on the highway seeing the parcels.
It appears that the depth of both remainders will be reduced considerably, which only emphasizes their irregular shape. The south remainder was left with 53,700 square feet and the north remainder with but 34,-700 square feet.
Taking all of these factors into consideration, the trial judge found that there was a diminution in value to the remainders and that severance damages should be awarded to the landowners. It is interesting to note that Breeding, the Department’s expert, agreed that all of the mentioned factors would have a diminishing effect upon remainders in this situation, yet he found no severance damages, based on his conclusion that the remainders would still be adequate for various commercial uses and that they would benefit from their location in regard to the interchange.
The trial judge stated his conclusions regarding severance damages, based largely on Patecek’s opinion, as follows:
"Because of the location of the remaining parcels with respect to the highway, their size and irregular shape the highest and best use of the remaining property would not be residential but secondary commercial. However, the preponderance of the evidence clearly demonstrates that the secondary commercial value of the property approximates in value the residential property in that vicinity. Therefore, while the best use of the subject property is commercial, its value has been reduced substantially to that of residential property. The use of residential sales as comparables is not inappropriate particularly in view of the absence of comparable sales of similar commercial property. Based on these com-parables, Mr. Patecek's computations shows that the severance damage was at least 55% of the 'before taking' value of the property,
"Mr. Stevenson determined the severance damage to be 60% of the 'before taking' value of the property. He based his determination on numerous adverse factors to the value of the property resulting from the taking. Mr. Stevenson made a further determination that the total cost of curative work on the subject property amounted to $23,010.34. He noted however that a complete cure did not exist for the subject property.
"Based on the preponderance of the evidence and the expert testimony, the Court finds that the severance damage to the remaining parcel amounts to 55% of the 'before taking' value of the property. As noted previously, the 'before taking' unit value of the property as determined by the State's own experts was ,75 cents per square foot. I therefore find severance damage as follows:
Before value of remainder of South tract 53.700 sq.ft. @$.75 sq.ft. = $40,275.00
Severance damage 55 % of 'before taking' value $22,151.25
Before value of remainder of North tract 34.700 sq.ft. @$.75 sq.ft. = $26,025.00
Severance 55 % of 'before taking' value -$14,3_13.75
Total severance damages $36,465.00"
*709 The trial court rejected the Department’s experts’ opinions that no severance damages were owed to the landowners. The judge considered that Deano had erroneously offset the damages to the landowners by a general appreciation in value, and that Breeding’s opinion that the benefits of the location of the remainders would be substantial was not supported by any facts. The trial court also rejected the compara-bles used by the Department’s experts, because they were not sales in the vicinity, but were from another part of the parish, where values were different from those in the Covington area.
Patecek determined that the commercial value of the remainders had so diminished that their diminished value closely approximated residential values in the vicinity. Although Patecek did not testify that the remainders’ highest and best use after taking was “residential”, he did say he determined that the .values would be about the same as residential, Thus, he valued the south remainder at $0,285 per square foot; and the north remainder, $0.30 per square foot. Patecek testified as follows:
“Q. What approach did you take in reaching a severance factor?
A. Well, the fact that it reduced the highest and best use. The highest and best use was reduced from highway commercial to something less than that. Now it is not really good residential. It is not good commercial. It can be used for some types of commercial but not a very good commercial.”

“A. It is an overimprovement now, yes, sir. Well, Lot B, that is the south lot in the subdivision, is approximately 400 feet or more from U.S. 190 and that just about puts it out of it as far as I am concerned, any real commercial value.

It may have some lower type commercial but that would put it in the same class as residential as far as price is concerned.”
“Q. The service road in the subject property is a through road or a dead end?
A. Well actually the service road is a dead end road but there is Helenburg Road and another road. I can’t think of the name of it now. It is in the subdivision. There are two small roads, Slimmer Road and Helenburg Road, that lead off the service road to the back part of the country road out there.
Q. They lead to what, to commercial or residential?
A. Residential.”
* * * * * *
“Q. What is your definition of something less than highway commercial?
A. Just that.
Q. What?
A. It can be, you can use it for, I have been trying to think of something that would want to locate there and I just can’t think of anything.
I have racked my brain to try to think of somebody that would want to buy that piece of property after the taking and use it for some purpose and I can’t.
Q. Well, let me ask you this then: your after value, did you appraise it as something less than commercial or did you appraise it as residential?
A. I appraised, it as something less than commercial using the residential figures because it would be about that price that they would pay for it.
Q. Well, would you say, in your opinion then, is something less than commercial more valuable or less valuable than residential?
A. I just told you I thought they were about the same in this case.”
We find no error on the part of the trial court in adopting the evaluation set forth by appraiser Patecek.
In State, Department of Highways v. Wax, 295 So.2d 833 (La.App. 1 Cir. 1974), writ den., La., 299 So.2d 800. we said:
*710 “It is well settled in our law that where the experts differ, the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony and his decision as to the valuation of property should not be disturbed on appeal unless shown to be manifestly erroneous.”
The record amply supports the trial court’s fixing the award for severance damages in the amount of $36,465.00.
The Department also contends that the trial court erred in fixing the award for improvements at $4,735.20. The appellant considers this to be excessive and asks that the award be reduced to $1,000.00. Its basic position on the question of improvements is that they are not to be valued separately, but are considered as they relate to the value of the enhancement of the land. That is correct. State, Department of Highways v. Strickland, 290 So.2d 714 (La.App. 1 Cir. 1974), writ den., La., 295 So.2d 177.
We note that the figure given as the value of the landscaping plants, $950.00, was arrived at by the appraiser merely looking at photographs of the plants. We find this manner of appraisal of this item unacceptable. It is, accordingly, rejected. This award is also rejected under authority of State, Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881 (1955), which states the general rule that trees and shrubbery are not to be appraised independently of the land. It is only when they have some unique value that such items are valued in addition to the fair market value of the property; State, Department of Highways v. Blair, 285 So.2d 212 (La.1973).
In Strickland, supra at p. 717:
“The inclusion of the trees in the value of the land taken is the method which has always been used in Louisiana, rather than debiting the trees as an item of damage.”
Even though the improvements may have possessed a certain amount of aesthetic value to the landowners, they are entitled to recover only what is required to place them in as good position pecuniarily as they would have been if the property had not been taken. State, Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20 (1958); State, Department of Highways v. Kornman, 336 So.2d 220 (La.App. 1 Cir. 1976).
Under the jurisprudence, we do not feel that the landowners are entitled to a separate award for the dedicated public road, culvert and entrance way, nor for the columns, electric lamps and posts. However, appellant’s brief, in an ambiguous manner and with an arithmetical error in computation, asks only that that portion of the judgment be reduced to $1,000.00 for the latter three items. Therefore, we reduce the award for improvements to $1,000.00. This will have the effect of reducing the total amount to the landowners from $123,555.20 to $119,820.00, subject to credit of $55,704.00, the amount previously deposited by the Department.
Finally, the Department challenges the award of expert witness fees as excessive. It contends that the fees awarded to Patecek and Stevenson were improper, since they merely conform to the amounts agreed to between the landowners and the real estate appraisers. See State, Department of Highways v. Whitman, 313 So.2d 918 (La.App. 2 Cir. 1975), writ den., La., 319 So.2d 443. However, the fixing of expert witness fees is largely within the sound discretion of the trial court. The law is settled that in order to change the amount awarded as expert witness fees, the appeal court must find that the trial court abused its sound discretion. State, Department of Highways v. Spillman, 276 So.2d 905 (La.App. 1 Cir. 1973).
In fixing such fees, each case turns on its own particular facts. There are certain factors though, that can be used in assessing such fees such as the expertise of the expert, the helpfulness of the expert’s report and testimony to the court, the time spent in preparing his report, the time spent in testifying as an expert witness, and awards to experts in similar cases. The *711 agreement between the landowner and the appraiser may be used as a factor in fixing the fee, but such an agreement can not be the sole criterion used by the court in fixing the expert fee. See State, Department of Highways v. Stegemann, 269 So.2d 480 (La.App. 3 Cir. 1972), writ den., La., 271 So.2d 533 (1973).
The trial court’s reasons for judgment reflect that the judge did not base his expert witness award solely on the agreement between the appraisers and the landowners. The judge concluded that the work involved and their court appearance justified the award. Detailed appraisals were filed in evidence. These appraisals and the appraisers’ testimonies were patently helpful to the trial court in his fixing just compensation. The record fully disclosed that the appraisers studied maps and diagrams, viewed the property, and made detailed studies of sales and transactions incidental to making their appraisals. Each appraiser made an independent and thorough analysis of the pertinent data in order to reach an evaluation of the property and to determine severance damages. They devoted several hours over a span of several days in their preparatory work.
We, therefore, find no abuse of the trial court’s discretion in fixing the expert witness fees.
Appellees ask that this court increase the severance damage award from $36,465.00 to $40,585.50. The trial judge elected to base his computation on a finding that the severed property was damaged to the extent of 55% of the “before taking” value. He chose this method rather than a unit computation of $0,465 X 53,700 square feet for the south remainder and $0.45 X 34,700 square feet for the north remainder, or $24,870.50 and $15,615.00, respectively. There was ample evidence for either approach; we cannot say that the court abused its great discretion.
For the foregoing reasons, the judgment of the trial court is amended to reduce the award for improvements from $4,735.20 to $1,000.00; and, in all other respects, the judgment is affirmed; the Department is cast for all costs for which it is legally assessable.
AMENDED AND AFFIRMED.