# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 13-399

**STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT**

**VERSUS**

**KNOLL & DUFOUR LANDS, LLC**

### CONSOLIDATED WITH

### 13-400

**STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT**

**VERSUS**

**GLENN F. DAUZART, ET UX**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 20116318 C/W NO. 20116477
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and John E. Conery, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**Bernard Lindes Knobloch, Jr.**
**LA-DOTD-Office of General Counsel**
**Post Office Box 94245**
**Baton Rouge, Louisiana 70804-9245**
**(225) 242-4617**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**State of Louisiana, Department of Transportation & Development**

**Jerold Edward Knoll**
**The Knoll Law Firm**
**Post Office Box 426**
**Marksville, Louisiana 71351**
**(318) 253-6200**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Knoll & Dufour Lands, LLC & Glenn F. Dauzart, et al.**

**CONERY, Judge.**

This is a consolidated case involving an expropriation proceeding by the State of Louisiana, Department of Transportation and Development (DOTD), against Knoll & Dufour Lands, LLC (Knoll & Dufour) and Glenn F. Dauzart and his wife Barbara Ponthieux Dauzart (Dauzarts). DOTD planned to re-route Highway 105 near Simmesport, Louisiana, in order to eliminate a dangerous curve in the highway. A jury trial resulted in a verdict favorable to the defendants. The jury awarded Knoll & Dufour $2,090 over the original amount of $12,120 deposited by the State. The jury awarded the Dauzarts $37,000 over the original amount of $71,000 deposited by the State. Both defendants sought considerably more compensation and filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court granted defendants motion for a new trial. No writ was taken by DOTD, and the case was re-scheduled for trial before another jury.

DOTD then failed to timely post the required jury bond, and the case proceeded to trial before the trial court without a jury. For written reasons assigned, the trial court granted a substantially more favorable judgment to the defendants, Knoll & Dufour and the Dauzarts. For the following reasons, we affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

On February 17, 2011, DOTD initiated a taking pursuant to La.R.S. 48:441 et seq. of what is referred to as Parcel No. 2-1 consisting of 0.533 acres of land, a portion of a 0.769 acre tract owned by Knoll & Dufour. Parcel No. 2-1 contained an unoccupied residence and outbuildings, with landscaping that included five live oak trees, four pecan trees, two large and two small, as well as a large cypress tree.

After the expropriation of Parcel No. 2-1, there remained one 0.013 acre tract located on the west side of the new right of way and a 0.223 acre tract located on the east side of the new right of way, both tracts having little value except as "assemblage" to the adjoining properties. DOTD had, as required, deposited $12,120 as the estimated just compensation due to Knoll & Dufour for Parcel No. 2-1.

On March 23, 2011, DOTD initiated a taking pursuant to La.R.S. 48:441 et seq. of what is referred to as Parcel No. 2-2 which consisted of 0.639 acres of land, a portion of a 1.5 acre tract owned by the Dauzarts. Parcel No. 2-2 contained a storage shed, animal pen, part of a septic drainage pond, and landscaping. The tract taken included three red oak trees, plus fruit-bearing fig, pear, and plum trees that had been planted by the Dauzarts. DOTD's plat revealed that eleven trees, including the three red oaks, were included in the expropriation. After the taking, the remaining 0.861 acre tract contained a residence, a mobile home, the remaining site improvements, and landscaping, which included a large pecan tree that is partly on the Dauzarts' remaining property and partly on the right-of-way. DOTD had, as required, deposited $71,000 as the estimated just compensation due to the Dauzarts for Parcel No. 2-2.

On October 11, 2011, the two cases were consolidated for trial by order of the trial court. A jury trial for the consolidated cases was held on February 13, 2012. On February 14, 2012, the jury found in favor of Knoll & Dufour and awarded $14,210, less the amount of $12,120 previously deposited by DOTD. The jury awarded the Dauzarts $108,000, less the $71,000 previously deposited by DOTD.

On March 12, 2012, both defendants filed a motion for judgment

2

notwithstanding the verdict, or in the alternative, motion for a new trial. An April 16, 2012 hearing resulted in the trial court granting the defendant's motion for new trial. On April 19, 2012, the trial court signed a judgment granting defendants a new trial.

On May 7, 2012 the notice of trial by jury was issued by the trial court fixing a jury trial for September 25, 2012. The notice specifically required that a jury bond of $3,000 be deposited with the court at least sixty days prior to trial. Failure to do so would result in a waiver of the right to a jury trial. No jury bond was posted by DOTD within the sixty days allotted.

The trial was continued to October 24, 2012, at the request of DOTD. Due to the continuance, the trial court, on October 3, 2012, ordered DOTD to file the jury bond by October 5, 2012, or waive its right to a jury trial. The jury bond was filed by DOTD on October 5, 2012. Nevertheless, on October 23, 2012, one day prior to trial, defendants filed a motion to strike the jury pursuant to La.Code Civ.P art. 1734.

The hearing on the motion to strike was held on October 24, 2012, just prior to jury selection. The trial court ruled in favor of the defendants and for oral reasons assigned, struck the jury, finding that the bond had not been posted within the sixty days of the original May 7, 2012 order fixing the September 25, 2012 trial date, and thus, DOTD had waived its right to a jury trial. A bench trial immediately proceeded on October 24 and 25, 2012. DOTD did not file an emergency writ or attempt to preserve the jury waiver issue for appeal. After trial on the merits, the trial court took the case under advisement and allowed the parties to file post-trial briefs. On December 3, 2012, the trial court issued its reasons for ruling finding in favor of the defendants as follows:

3

KNOLL & DUFOUR AWARD:

Total amounts awarded will be $186,352.00. These amounts are composed of:

a) compensation for land designated as 2-1 on Exhibit D2, $164,720.00;

b) compensation for improvements within the immovable designated at 2.1, $18,580.00;

c) and indicated severance damages, $3,052.00;

d) in addition, pursuant to this Court's opinion and ruling, and pursuant to RS 48:453 [E], this Court will award attorney's fees in the amount of 25% of that total award, for a total attorney's fee award of $46,588.00.

DAUZART LANDS

This Court will award the Dauzart['s] the amount of $247,096.00, comprised of:

a) compensation for the land within the right-of-way, $33,051.00;

b) compensation for improvements within the right-of--way, $1,535.00;

c) diminution of value of remaining estate, $90,967.00;

d) and additional compensation of $121,543.00;

e) additionally, this Court will award attorney's fees pursuant to statute of 25% of the award attributable to the Dauzart property, for a total attorney's fee award in the Dauzart matter of $61,774.00;

The amounts deposited by the State ($12,120.00-Knoll-Dufour; $71,000.00-Dauzart property) shall be credited toward the judgment. Counsel for Knoll-Dufour and the Dauzarts shall prepare a judgment consistent hereto within 14 days. All costs are assessed against the State, and with interest from date of judicial demand.

On December 20, 2012, the trial court amended its reasons for ruling, reducing the attorney fee award to Knoll & Dufour from $46,588 to $43,558 and the attorney fee award to the Dauzarts from $61,774 to $44,024. Judgment consistent with both the reasons for ruling and the amended reasons for ruling was rendered on December 20, 2012.

DOTD appeals the judgment of December 20, 2012, in its entirety, challenging the trial court's award of $186,352, less the deposit of $12,120, plus 25% attorney fees to Knoll & Dufour and the award of $247,096, less the deposit

4

of $71,000, plus 25% attorney fees to the Dauzarts.

## ASSIGNMENTS OF ERROR

DOTD asserts ten assignments of error and seeks a ruling from this court stating that the sums deposited by DOTD, as determined by DOTD's expert, Mr. Jody Morvant, $12,120 in the case of Knoll & Dufour, and $71,000 for the Dauzarts, should comprise the total compensation owed by DOTD in this taking.

## LAW AND ANALYSIS

### *Standard of Review*

Article 1, § 4 of the Louisiana Constitution of 1974 authorizes the state to take an individual's property with the provision that the taking be conducted for public purposes and the owner be compensated fairly. In a determination of the right of compensation to an individual or business whose property has been subject to a taking, La. Const. art. 1, § 4 provides in pertinent part:

> (B)(1) Property shall not be taken or damaged by the state . . . except for public purposes and with just compensation paid to the owner or into court for his benefit . . . .
>
> (5) In every expropriation . . . the owner shall be compensated to the full extent of his loss . . . the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.

Louisiana Constitution Article 1, § 4, which was revised in 1974, requires that a landowner be allowed to maintain the same financial condition enjoyed both before and after the expropriation. *State, Dep't of Transp. & Dev. v. Dietrich*, 555 So.2d 1355 (La.1990). In 1974, the Louisiana Constitution was re-worded to provide that an "owner shall be compensated to the full extent of his loss," when land is expropriated by the state. Previously, a landowner could only receive the fair market value and any severance damages for property taken through

5

expropriation. The change permits a landowner to remain in an equivalent financial position to that which he enjoyed before the taking." *Id.* (*citing State, Dep't of Highways v. Bitterwolf,* 415 So.2d 196 (La.1982).

In *Dietrich* the supreme court stated, "Article 1, Section 4, does not specify how to fully compensate a landowner whose property is taken," but does provide, "that the landowner should be compensated for 'his loss' not merely the loss of his land." *Id.* at 1358.

Louisiana Revised Statutes 48:453 provides guidance in cases such as these, where DOTD has taken only a part of the owners' property. The statute requires the measure of damages be determined for the owner's remaining property on the value immediately before and after the taking. La.R.S. 48:453 provides in pertinent part:

A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.

B. The measure of damages, if any, to the defendant's remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.

C. The owner shall be compensated to the full extent of his loss.

In order to recover an amount in excess of the amount DOTD has deposited as just compensation for the taking of a landowner's property, the property owner is required "to establish his claims by a reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment." *State, Dep't of Transp. & Dev. v. Manuel,* 93-269, p.3 (La.App 3 Cir. 2/9/94), 640 So.2d 299, 301, *writ denied,* 94-542 (La.4/29/94), 641 So.2d 203.

In addition, when only a portion of a defendant's property is taken, the landowner is also entitled to severance damages, which must also be proven by the defendant under a preponderance of evidence standard and requires a determination of the difference between the value of the remaining property before and after the taking. *State, Dep't of Transp. & Dev. v. Estate of Bickham*, 93-1664 (La.App.1 Cir. 6/24/94), 640 So.2d 841. The determination of what damages are owed to compensate the landowner is one of fact. *Id.*

The trial court's factual determinations of the value of property and entitlement to any other damages in an expropriation proceeding will not be disturbed on appeal in the absence of manifest error. *West Jefferson Levee District v. Coast Quality, et al.*, 93-1718 (La. 5/23/94). 640 So.2d 1258, 1277. "Likewise, where the testimony of the experts and witnesses is contradictory and where the judge decides to give more or less weight to the testimony of certain individuals, his findings cannot be overturned unless manifest error appears in the record." *Id.* at 1277.

An expert's opinion regarding valuation is advisory only, used to assist the court in determining the amount of compensation due in an expropriation case. Therefore, it is for the trier of fact to determine the weight to be given to expert testimony, determined by such factors as the expert's professional qualifications and experience, facts and studies upon which the expert's opinion is based, the expert's familiarity with the locality of the property involved, and the possible bias of the witness in favor of the side for whom he testifies. *Id.*

Accordingly, where experts disagree as to the value of the land taken, the trier of fact has "much discretion in evaluating and determining the weight to be

given to each expert." *Id.* The trier of fact's prerogative to weigh varying expert testimony and to reach a value that does not coincide with the testimony of any expert witness may only be exercised when there is evidence in the record to reasonably support the court's valuation. *Id.*

Louisiana Revised Statute 48:456 allows for the award of the following damages in an expropriation and states in pertinent part:

> A. If the amount finally awarded exceeds the amount so deposited, the court shall enter judgment against the department and in favor of the persons entitled thereto for the amount of the deficiency. The judgment shall not be an in globo award, but shall list separately the amounts awarded, but not deposited, for:
>
> (1) An increase in the fair market value of the part taken;
> (2) An increase in severance damages;
> (3) Attorney fees;
> (4) Expert witness fees; and
> (5) Any other type of loss or damage.
>
> B. Those portions of the final judgment which award an increase in the value of the part taken, an increase in severance damages, compensation for any other type of loss or damage, together with interest payable on those sums not deposited, attorney fees, and expert witness fees shall be paid within ninety days after becoming final. Thereafter, upon application by the owner or owners, the trial court may issue a writ of mandamus to enforce payment.

### DISCUSSION AND ANALYSIS

*Valuation of Trees*

*State v. Glassell* is the formative case on the issue of trees and damages on expropriated property, albeit an older case from the Louisiana Supreme Court decided in 1955. *State, Dep't of Highways v. Glassell*, 226 La. 988, 77 So.2d 881 (La.1955). Generally, in considering the fair market value of the land taken, native trees should be considered by the judge only in determining the value of the land as a whole. *State, Dep't of Highways v. Strickland*, 290 So.2d 714 (La.App. 1 Cir. 1974). The Louisiana Supreme Court indicated that native trees are those that

8

spring up on their own and are not harvested year to year. *State, Dep't of Highways v. Black*, 207 So.2d 583 (La.App. 3 Cir. 1968). Trees should not have an independent separate value, unless they are a grown as a special crop. *State, Dep't of Highways v. Miltenberger*, 344 So.2d 705 (La.App. 1 Cir. 1977). The second circuit has held that grafted pecan trees are crops according to La.R.S. 48:218. *State, Dep't of Highways v. Williams*, 210 So.2d 616 (La.App. 2 Cir. 1968). However, the third circuit has reached a different conclusion, finding that the pecans themselves are the actual crop. *State, Dep't of Highways v. Bernard*, 271 So.2d 303 (La.App. 3 Cir. 1972). Unless the trees are considered nursery stock or crops, trees are only to be considered in determining the value of the land as a whole. *Dixie Electric Membership Corp. v. McDowell*, 280 So.2d 306 (La.App. 1 Cir. 1973). The income producing value, the usefulness or worth as shade trees, or the aesthetic or ornamental value may only be considered in determining the value of the land on which the trees are located. *Black*, 207 So.2d 583.

In addition to compensation for the fair market value of the land taken and its increased value because of the trees, the land owner is entitled to compensation for the loss of value of the remaining portion of the land. Lost or destroyed trees are to be included in the calculation of severance damages for the lost value of the remaining tract. Severance damages are measured by the value of the property immediately before and immediately after the taking. These damages also take into consideration the effects of the completion of the proposed project. *State, Dept. of Transportation v. Schwegmann Westside Expressway, Inc.*, 95-1261 (La. 3/1/96), 669 So.2d 1172. Trees that are lost or destroyed should be included in the judge's assessment of severance damages in evaluating the lost value of the remaining property. *City of Lafayette v. Dore*, 460 So.2d 755 (La.App. 3 Cir. 1984). This

9

includes trees planted for shading and aesthetic purposes that have no value separate from the land, as they only enhance the value of the whole. *State, Dep't of Highways v. Shackelford*, 331 So.2d 884 (La.App. 2 Cir. 1976); *State, Dep't of Highways v. Moresi*, 189 So.2d 292 (La.App. 3 Cir. 1966).

As to both the fair market value of the land taken and the diminished value of the remaining tract, the standard of review is the same. The fixing of the value of the property by the trial court will not be disturbed unless manifestly erroneous. *Board of Com'rs of the Tensas Basin Levee Dist. v. Crawford*, 98-1606 (La.App. 3 Cir. 4/21/99), 731 So.2d 508, *writ denied*, 99-1475 (La. 9/3/99), 747 So.2d 546.

The trial court awarded Knoll & Dufour a total amount of $186,352, less the credit for the $12,120 deposited by the state, leaving an amount of $174,232 as compensation owed by DOTD for Parcel No. 2-1. Per the requirements of La.R.S. 48:456, the judgment listed the amount of each award separately. The trial court awarded, $164,720 for the land designated Parcel No. 2-1 on Exhibit D-2, the plat of the property. Most of that award, the sum of $158,000, was based on the "valuation of trees" located on Parcel No. 2-1. The amount of $18,580 was awarded for compensation for improvements and the immovable designated on Parcel No. 2-1, $3,052 as severance damages, and $43,558 in attorney fees.

The trial court awarded $33,051 to the Dauzarts as compensation for the land within the right-of-way, $30,000 of which was for the large pecan tree, three oak trees, fruit trees, and shrubbery located on Parcel No. 2-2.

The main focus of DOTD's appeal is the value assigned by the trial court to the trees on both Parcel Nos. 2-1 and 2-2, but in particular on the Knoll & Dufour Parcel No. 2-1. Therefore, this court will first address the issue of the value of the trees on the Knoll & Dufour property, insofar as the trees may have contributed to

10

the value of Parcel No. 2-1.

DOTD first asserts that the trial court placed too much emphasis in its ruling on DOTD ESDM No. 1.1.1.21.[1] Some of trees at issue were listed within DOTD's regulation as requiring special attention. This regulation is a directive to DOTD to follow certain procedures to protect what is defined in the regulation as a "significant" tree. There is no evidence in the record to support that DOTD followed the directive of ESDM No. 1.1.1.21, but this is of no moment, as the regulation does not grant a right to these landowners to a separate award for the trees apart from their contribution to the value of the land. *Glassell*, 226 La. 988

The trial court's Reasons for Ruling discussed the directive in DOTD ESDM No. 1.1.1.21, and found that "no consultation was performed," and thus, the trees were destroyed. There was no evidence, analysis, finding, or conclusion that any of the trees could have been saved or re-planted elsewhere, and no finding by the trial court as to how much, if any, the trees contributed to the value of the property taken.

The trial court's valuation of the trees on Parcel No. 2-1, totaled $158,000, the majority of the trial court's award for the value of the property taken. To support that award, the trial court relied on the testimony of Mr. Henry Wilbanks, along with the figures and methodology contained within his expert report, also

---

[1] DOTD ESDM No. 1.1.1.21 states:
**2. Definition:**
 For the purposes of this policy, a significant tree is a Live Oak, Red Oak, White Oak, Magnolia or Cypress that is considered aesthetically important, 18" or greater in diameter at breast height (4'-6" above the ground), and having a form that separates it from the surrounding vegetation or is considered historic. A historic tree is a tree that stands at a place where an event of historic significance occurred that has local, regional, or national importance. A tree may also be considered historic if it has taken on a legendary stature to the community; mentioned in literature or documents of historic value; considered unusual due to size, age or has landmark status. Significant trees must be in good health, and not in a declining condition.

introduced into evidence. Mr. Wilbanks testified that he sent a letter to Mr. Greg Kojis of the GIBKO Nursery, Inc. in Bunkie, Louisiana, dated July 18, 2011. The letter was introduced into evidence over DOTD's objection. Mr. Kojis allegedly signed the letter, referred to loosely as the "GIBKO Report," and "valued" the trees on the Knoll & Dufour property at $158,000.[2] The letter sent by Mr. Wilbanks to GIBKO listed each tree separately and had a blank next to it for GIBKO, or Mr. Kojis, to fill in for the value of each tree. The values filled in were $15,000 each for the two large pecan trees, $5,000 each for the two small pecan trees, $20,000 each for the five live oak trees and $18,000 for the large cypress tree, totaling $158,000.

We find that the trial court committed both manifest error and legal error. The legal error occurred when the trial court admitted into evidence and then relied on the GIBKO Report, which formed the main basis for Mr. Wilbanks expert testimony as to the total value of Parcel No. 2-1. Utilizing the GIBKO Report, Mr. Wilbanks simply added the value of the trees to the fair market value of the property, which is in direct contradiction to the supreme court's ruling in *Glassell* and is manifestly erroneous.

In *Glassell*, the supreme court found the trial court erred in awarding additional compensation for thirty native pecan trees that had grown up "indiscriminately" on the property at issue, and agreed with the State that it was error to value the trees independently of the land. In so finding, the supreme court in *Glassell* stated:

---

[2] The trial court's Reason's For Ruling reflect that the amount of the GIBKO Report was $168,000, however, the total in the GIBKO Report as indicated in Mr. Wilbanks' expert report was $158,000.

We think that this point is well taken. The pecan trees in the instant case were not grown on the land as a special crop by defendant; they are native pecans which have sprung up indiscriminately on different parts of the land. Therefore, their value cannot be regarded as constituting a separate item of damage to defendant and should have been considered by the judge only in determining the value of the land on which they were located. (*other citations omitted*)

In *City of Lafayette v. Dore*, 460 So.2d 755(La App. 3 Cir. 1984), cited by defendants in support of the separate valuation of the trees, a panel of this court awarded $23,200 in severance damages for the loss of trees and shrubs, which resulted in a diminution of the value of the defendants' remaining property.

In its opinion, the *Dore* court cited another panel of this court in the case of *State, Dep't of Highways v. Moresi,* 189 So.2d 292(La.App. 3 Cir,1966) as the basis for an award of severance damages for the loss of four shade trees when their loss resulted in a reduction of the market value of the landowners' property.

In this case, the trial court did not award the loss of the value of the trees as severance damages. There was no evidence that the loss of the trees decreased the value of the remaining small tracts of the Knoll & Dufour property. Instead, the trial court found the two remaining tracts were separated by the new Highway 105 with only 0.013 acre on one side and 0.223 acre tract on the other. Both tracts were too small to have severance damages and were valuable only as assemblage for the land adjacent to them. The trial court's award included the calculation of the total fair market value of these two remaining tracts.

Neither *Dore* nor *Moresi* supports defendants' contention that they are entitled to a separate value on their trees, as the trees at issue in this case cannot be appraised independently of the land, as held in *Glassell* and addressed more completely below.

The Louisiana Supreme Court, in *Arias v. Stolthaven New Orleans, L.L.C.*,

13

08-111, p. 5 (La. 5/05/09), 9 So.3d 815, 818, instructs:

> A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that was manifestly erroneous or clearly wrong. *Stobart v. State, Dep't of Transp. and Development,* 617 So.2d 880, 882, n. 2, (La.1993). When the court of appeal finds that a reversible legal error or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989)

Louisiana Code of Evidence Article 703 requires that the facts or data upon which experts rely need not be admissible, provided this type of information is relied upon by experts in the same field. *Ferrara v. Questar Exploration and Prod. Co.,* 46,357 (La.App. 2 Cir 6/29/11), 70 So.3d, 974, 980-81.

Mr. Wilbanks testified that in order to place a value on the trees located on the Knoll & Dufour Parcel No. 2-1, he called the GIBKO Nursery, Inc. in Bunkie, Louisiana and spoke to a secretary about obtaining a value for the trees in question. After speaking with the secretary, Mr. Wilbanks prepared the aforementioned correspondence dated July 18, 2011, listing the number and types of trees located on the Knoll & Dufour Parcel No. 2-1, with a blank line for the estimated value of each of the types of trees listed.

Although the letter appeared to have been prepared by the GIBKO Nursery in response to a request by Mr. Wilbanks for a valuation of the trees, Mr. Wilbanks testified at trial that he prepared the entire correspondence. The only portions of the correspondence completed by GIBKO, supposedly by Mr. Kojis, are the handwritten values listed for each type of tree with what may be Mr. Kojis's signature, with "GIBKO Nursery, Inc." below the signature line. Attached to Mr. Wilbanks' July 18, 2011 correspondence were photographs of the trees for which Mr. Wilbanks was seeking a value. No one with the GIBKO Nursery testified at

14

trial. Mr. Kojis signature was not authenticated, and no basis whatsoever was given for the values attributed to each type of tree listed.

During questioning by counsel for DOTD, Mr. Wilbanks stated he did not know if Mr. Kojis actually signed the letter, as he had never spoken with Mr. Kojis, and did not know his qualifications. Further, he was also unaware of whether Mr. Kojis had inspected the property or the trees, or if the value placed on the listed trees was based on the photographs attached to the July 18, 2011 correspondence. An evaluation of landscaping by looking at photographs has been deemed unacceptable as a method of appraisal. *State, Dep't of Highways v. Miltenberger*, 344 So.2d 705(La.App. 1 Cir. 1977).

Mr. Wilbanks' July 18, 2011 letter, addressed to himself and then sent to GIBKO Nursery, stated, "Dear Mr. Wilbanks, You have requested the estimated value of the trees located on the Eddie Knoll and Joey Dufour residential site just south of Simmesport, La. After analysis, we estimate the value of the trees as follows."

Mr. Wilbanks admitted during cross examination it is standard practice in appraisals to value the improvements, including trees, as to their contributory value to the whole. However, in connection with the correspondence to the GIBKO Nursery, Mr. Wilbanks admitted that he did not request that Mr. Kojis estimate how much the trees contributed to the value of the land and could not explain why he did not seek this information. In fact, he was unsure of the basis for the value Mr. Kojis placed on the trees, assuming that Mr. Kojis even signed the letter at issue.

Mr. Wilbanks testified that to his knowledge Mr. Kojis had not personally inspected the trees on Parcel 2-1, and thus his evaluation of the value of the trees was

based on photographs attached to the July 18, 2011 correspondence, which has been deemed an unacceptable method of appraisal. *Miltenberger*, 344 So.2d at 710 This testimony, coupled with the circumstances surrounding the creation of the GIBKO Report, can only lead to the conclusion that this particular report is not the type "customarily relied upon" by appraisers in preparing their expert testimony. *Ferrara,* 70 So.3d at 980-81.

The record reflects Mr. Wilbanks simply added the GIBKO Report's listed value of $158,000 for the trees to his original valuation of the land of $6,720, resulting in $164,720 as the appraised value of the Knoll & Dufour Parcel No. 2-1 taken in the expropriation for the construction of Highway 105.

When Mr. Wilbanks was questioned by DOTD's counsel concerning his appraisal methodology, which included a separate value for the trees based on the GIBKO Report, and whether the value of the trees was relevant, he responded, "Apparently I did, because that's what they [GIBKO Nursery] said and that's what the value of the trees were so I added it."

Mr. Wilbanks' testimony at trial mirrored the appraisal contained in his expert report, wherein under the heading "**Landscape Trees**" he stated: "The subject tract is covered with landscape trees that are considered to be valuable. Since the appraiser is not an expert in the evaluation of landscape trees, a local nursery was contacted for the valuing of trees. (See Evaluation in the addenda)"

Mr. Wilbanks impermissibly took the value of the trees from the GIBKO Report and added that value to the appraised value of Parcel No. 2-1. His methodology is contrary to the settled case law, which provides that a property owner is not allowed compensation for the value of the land plus the individual value of the trees, but only for the value that the trees contribute to the value of the

16

land. *Glassell*, 77 So.2d 881.

We find that the trial court committed legal error in relying on the GIBKO Report as it is not "of a type reasonably relied upon" by other appraisers in forming their opinions or inferences in determining the value that the trees contribute to the value of the land. *Ferrara,* 70 So.3d at 980-81. Thus, the trial court committed legal error in accepting Mr. Wilbanks testimony, based on the GIBKO Report, that the Knoll & Dufour Parcel No. 2-1 had a total value of $164,720.

After conducting a de novo review, this court is unable to place a value on the land taking into account the increase in value due to the presence of the trees on the Knoll-Dufour Parcel 2-1. Mr. Joseph William Dufour, Jr., also an expert arborist, but a party to this suit, did testify that the trees in question all added significant value to the land. But he, too, used the GIBKO Report and simply added the numbers on the report to the appraisal value of the land.

DOTD's expert, Mr. Morvant did not offer testimony as to how much additional value to place on the land due to the presence of the trees. The only evidence in the record upon which this court might rely is the first comparable land sale in the appraisal report of Mr. Wilbanks, wherein a picture of land he used as a comparable depicts several large trees. The comparable, likewise, does not explain how much the trees added to the value of the land.

In fairness to all parties, we therefore reverse the award of the trial court of $164,720 as "compensation for the land designated as 2-1 on Exhibit D2," and remand to the trial court for a determination of the value of the land taken by DOTD in accordance with this ruling and the supreme court decision in *Glassell.*

### Trees on Dauzart Parcel No.2-2

The trial court awarded $30,000 to the Dauzarts for the value of the trees on

Dauzart Parcel No. 2-2. The $30,000 award was based on the testimony of Mr. Wilbanks, who simply used the individual tree values listed in the GIBKO Report to value the trees on Dauzart Parcel No. 2-2. The GIBKO Report did not place a value on the trees on Dauzart Parcel No. 2-2.

Therefore, for the same reasons expressed with respect to the Knoll & Dufour Parcel 2-1, we reverse the award of the trial court of $33,051 as "compensation for the land within the right-of-way," and remand to the trial court for a determination of the value of the land taken by DOTD in accordance with this ruling and the *Glassell* decision of our supreme court.

***Site Improvements and Immovable on Knoll & Dufour Parcel No. 2-1***

DOTD contends the trial court erred in accepting the testimony of Mr. Wilbanks for the value of the residence located on Parcel No. 2-1. The experts, Mr. Wilbanks and Mr. Morvant, used both the cost data approach and the sales comparison approach to arrive at the value of the site improvements and the immovable located on Parcel No. 2-1. Utilizing the cost data approach, Mr. Wilbanks found the replacement cost of a new residence on Parcel No, 2-1 would total $58,092, with a depreciated value of $19,400, in addition to $998 for the site improvements. Mr. Morvant, also utilizing the cost data approach, determined that the replacement cost for the residence would total $58,850. However, due to the age of the residence of 48 years, and its poor condition, he testified that unless work was done within the next two years, the residence would have no economic value at all. He depreciated the residence by 96%, leaving a depreciated value of $2,354, plus $719 for the site improvements.

Mr. Wilbanks found, based on the sales comparison approach, a value of $18,000 for the residence and $3,036 for the site improvements. Mr. Morvant

found, under the sales comparison approach, a value of $3000 which included both the residence and the site improvements

The trial court awarded $18,580 as compensation for the taking of the improvements and the residence. Where experts disagree as to the value of the land taken, the trier of fact has "much discretion in evaluating and determining the weight to be given to each expert." *West Jefferson Levee District,* 640 So.2d at 1277. Thus, we find no manifest error in the trial court's award of $18,580 as compensation for improvements and the immovable on the Knoll & Dufour Parcel No. 2-1.

### *Severance Damages for Knoll & Dufour Parcel No.2-1*

The property taken by the state was a small part of a 300 plus acre tract. Mr. Wilbanks' testimony and opinion, explicitly adopted by the trial court, reflected that the construction of Highway 105 caused the previously 300 contiguous acre tract of Knoll & Dufour to be divided into three separate tracts. The taking by DOTD left a 299 acre larger tract to the west, which was now separate from two smaller tracts, 0.013 acres on the west side of the highway and 0.223 acres on the east side of the highway. The two smaller tracts now have a reduced value. They could no longer be developed for residential or commercial purposes, as they were no longer eligible for sewer services.[3] Prior to the taking, the two smaller tracts plus the 0.533 taken, comprised a contiguous 8,000 square foot plus parcel "with water, sewage, and approximately ten valuable trees." Both experts agreed that the remaining two smaller tracts were essentially worthless and could only be used as assemblage with the adjacent property owners.

---

[3] As will be discussed in relation to the taking of the Dauzart Parcel No. 2-2, certain requirements for size must be met in order to obtain the necessary permitting for a septic system.

Mr. Morvant calculated the severance damages for the two remaining tracts at $1,967. Mr. Wilbanks estimated the severance damages for the two small tracts at $3,052 based on a $12,600 per acre valuation of the property. The trial court accepted Mr. Wilbanks' opinion on this issue. Based on the trial court's vast discretion, we find no manifest error.

### *Dauzart Parcel No. 2-2*

The trial court awarded the Dauzarts a total amount of $247,096, less the credit for $71,000 deposited by the State, leaving an amount of $176,096 additional compensation owed by DOTD for Parcel No. 2-2. Once again, as per the requirements of La.R.S. 48:456, the judgment listed the amount of each award separately. The trial court awarded $33,051 as compensation for the land within the right-of-way, previously reversed and remanded, $1,535 for the improvements within the right-of-way, $90,967 for diminution of the value of the remaining estate, $121,543 in additional compensation, and $44,024 in attorney fees.

In making the determination of its award to the Dauzarts for Parcel No. 2-2, the trial court accepted in its entirety the "Final Estimate of Value" contained within Mr. Wilbanks' expert report. The difficulties faced by the Dauzarts due to the expropriation are clearly supported in the record and include a home which now no longer faces the road and will require a rearrangement of the interior, in addition to its close proximity to the now existing Highway 105. This situation is further complicated by the poorly functioning sewer system causing odor and drainage problems. The Dauzarts are no longer able to obtain a permit for a new, properly working sewage system in the residence. For the following reasons, with the exception of the "compensation for land within the right-of-way," previously addressed, we affirm the ruling of the trial court and find that DOTD's remaining

assignments of error with regard to the Dauzart property are without merit.

DOTD argues that the trial court erred in finding the septic system on the Dauzart remainder could not be reestablished. It is undisputed that the Avoyelles Parish Health Department requires at least one acre or larger to maintain a sewage system, and the Dauzart remainder consists of .861 acres. DOTD argues that the Dauzarts are presently maintaining a sewage system under a "grandfather" permit from the Avoyelles Parish Health Department. However, Mr. Dauzart testified that although they do have a permit, the system is sub-par and it is causing terrible problems. He and his wife claimed the situation is untenable, causing the Dauzarts to constantly plunge toilets, unblock backed up sewage, and leave the residence due to the strong smell of sewage.

The trial court noted in its reasons that Mr. Dauzart testified it was his intention to remain in the home for the rest of his life, but his wife no longer wanted to remain and "he needs nerve pills." Mrs. Barbara Dauzart testified about the odor and the noise associated with the new sewer system. She indicated her desire to move and is "depressed, cries a lot and is not happy."

Mr. Dauzart's testimony was supported by Mr. Jerry Smith, a licensed sanitarian, who also confirmed that the Avoyelles Parish Health Department would not permit a sewage system on property less than one acre, and that periodic rises of the nearby Atchafalaya River will further complicate the already problematic situation.

Although DOTD argues that the Dauzarts could obtain one of the remaining parts of the Knoll & Dufour tracts, now classified as assemblage, the law does not require the landowner to rectify a situation caused by a taking. It is the duty of DOTD to place the landowner in the same position as before the taking. The non-

21

functioning sewage system and the problems associated therewith support the determination by the trial court that requires the Dauzarts be placed in the same financial position as before the taking.

It is also undisputed that the orientation of the Dauzart home after the construction of Highway 105 placed the front of the home facing the Atchafalaya River levee and the back of the home facing the now existing Highway 105. Mr. Wilbanks testified that he has served as an expert for DOTD in several expropriation cases, only one of which involved the drastic reorientation of the residence where the back of the home faced the highway. In that case, DOTD elected to take the entire property, as opposed to the situation the Dauzarts are now facing because of the taking.

DOTD urges that the trial court erred in awarding the additional compensation of $121,543 to the Dauzarts, stating the trial court gave "no legal justification for this award." On the contrary, the trial court determined that the Dauzarts were entitled to the additional compensation based on the testimony of and calculations contained in Mr. Wilbanks' expert report. In the section entitled "ADDITIONAL COMPENSATION ANALYSIS, IF ANY (GAINS AND/OR LOSSES)," Mr. Wilbanks concluded that the expropriation caused the Dauzarts' remaining property to suffer "significant damages due to the taking," which reduced the highest and best use from "rural residential" to "assemblage." His opinion was based on the "reduced size of the lot & sewer disposal diminution, thus marketability of the property."

Mr. Wilbanks' report also addressed the issue of the repositioning of the Dauzarts' home and stated, "In addition, the new highway is located at the rear of the dwelling. This caused the back of the house to 'front' the new highway. An

22

estimated $50,000 was required to rearrange the interior." His report also concluded that, "due to the lack of area for the residence, the improvements must be razed so the vacant site will be available for its Highest and Best Use at an estimated cost of $35,000."

DOTD's expert, Mr. Anthony "Ronnie" Rabalais' testified at trial and his expert report was also admitted into evidence. Mr. Rabalais outlined the replacement costs and costs to cure the Dauzarts' property. He was qualified as an expert by the trial court in construction costs and development. Mr. Rabalais estimated replacement costs at $183,407.75, with $5,059 for improvements within the right of way. Mr. Rabalais also estimated the costs to cure, which are not applicable in a full taking. He included $900 for a sewer upgrade, $7,087 for the driveway, $1,500 to relocate the propane bottles, $350 for relocation of the clothes line, $4,200 for stump removal of a large pecan tree, and $6,500 for landscape screening along the rear of the property. When all these costs are added, they total a rounded off amount of $209,004.

As stated by the supreme court in *Dietrich*, "Article 1, Section 4, does not specify how to fully compensate a landowner whose property is taken," but does provide, 'that the landowner should be compensated for "his loss" not merely the loss of his land.' Based on the foregoing, we find no manifest error in the award made to the Dauzarts by the trial court with the exception of the $33,051 awarded as "compensation for the land within the right-of-way" on Parcel No. 2-2.

## DISPOSITION

For the forgoing reasons, the Judgment of the trial court is affirmed, except for the award of $164,720 to Knoll & Dufour for "compensation for land designated as 2-1 on Exhibit D2" and the award of $33,051 to the Duzarts for

23

"compensation for the land within the right-of-way" on Parcel 2-2, which are reversed and remanded to the trial court for a determination in accordance with this ruling.

### Knoll & Dufour Parcel No. 2-1

The trial court's remaining awards to Knoll & Dufour of $18,580 as compensation for improvements and the immovable on Parcel No. 2-1, and $3,052 for severance damages are affirmed. Once a determination is made by the trial court as to how much the trees contribute to the total value of the land taken, in accordance with *Glassell,* the trial court as required by La.R.S. 48:453(E), should award attorney fees reflecting 25% of the total award less the amount deposited by the State.

### Dauzart Parcel No. 2-2

We affirm the trial court's remaining awards of $1,535 as compensation for improvements, $90,967 for diminution of the value of the remaining estate, and $121,543 as additional compensation to the Duzarts. Again, once a determination is made by the trial court as to how much the trees contribute to the total value of the land taken, the trial court as required by La.R.S. 48:453(E), should award attorney fees reflecting 25% of the total award less the amount deposited by the State.

### Judicial Interest

We, likewise, reverse the trial court's award of legal interest from the date of judicial demand. Once a final judgment is rendered by the trial court, legal interest is owed pursuant to La.R.S. 48:455, which allows legal interest on the amounts awarded in excess of the amounts deposited by DOTD from the date the Knoll & Dufour and Dauzart defendants filed their answer to the expropriation, until paid,

as provided in La.R.S. 48:450. However, the award of legal interest does not apply to an award of either expert fees or attorney fees prior to judgment.  La.R.S. 48:455

Costs for this appeal are assessed 80% to the State of Louisiana, Department of Transportation and Development (DOTD), and 10% against Knoll & Dufour Lands, LLC (Knoll & Dufour) and 10% against Glenn F. Dauzart and his wife Barbara Ponthieux Dauzart (Dauzarts)

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**